# INSPIRATION CONSOLIDATED COPPER COMPANY, a Corporation, Appellant, v. CEFERINO MENDEZ, Appellee.

1. APPEAL AND ERROR—FILING APPEAL BOND—TIME.—Under Civil Code of 1913, sections 1233, 1235, 1236, and 1237, as to perfection of appeal, since the appeal is perfected by giving the notice thereof, the appeal bond may be filed before the notice is given so long as both the bond and the notice are filed within six months of the date of the judgment.

2. APPEAL AND ERROR—FILING APPEAL BOND—TIME.—Under Civil Code of 1913, section 1253, a party having the right to object to an appeal bond for insufficiency waives any defect by failure to give the required notice; and the time when the bond was filed becomes material only as fixing the time when objection may be made.

3. APPEAL AND ERROR—FILING APPEAL BOND—TIME.—A bond in the nature of a *supersedeas* bond filed before notice of appeal is given does not stay the judgment until the notice of appeal is given.

4. CONSTITUTIONAL LAW—INJURIES TO SERVANT—LIABILITY—STATUTES—CONSTRUCTION.—Constitution, article 18, section 7, providing that the legislature shall enact an employer's liability law making the employer liable for injury to employees without the employees' negligence, is mandatory.

5. CONSTITUTIONAL LAW—DIVISION OF POWERS.—There is no means by which the legislature may be coerced into obeying a constitutional mandate requiring the enactment of a certain statute.

6. MASTER AND SERVANT—INJURIES TO SERVANT—WORKMEN'S COMPENSATION ACTS—CONSTRUCTION.—In view of Civil Code of 1913, section 3147, providing that employment in all underground mines, underground workings, open cut workings, open pit workings, in or about, and in connection with, the operation of smelters, reduction works, stamp-mills, concentrating-mills, chlorination processes, cyanide processes, cement works, rolling-mills, rod-mills and at coke ovens and blast furnaces, is hereby declared to be injurious to health and dangerous to life and limb, laws enacted which reasonably regulate the employments enumerated are within the police powers of the state.

7. MASTER AND SERVANT—INJURIES TO SERVANT—ASSUMPTION OF RISK. In view of Civil Code of 1913, section 3147, the employee can as-

sume only such risks and dangers as are not inherent in the occupation.

[As to assumption of risk under federal Employers' Liability Act, see note in **Ann. Cas.** 1915B, 481.]

8. CONSTITUTIONAL LAW—WORKMEN'S COMPENSATION ACT—EQUAL PROTECTION OF THE LAWS.—Civil Code of 1913, title 14, chapter 6, creating a liability upon the employer for all injuries to employees without the fault of such employees and regardless of the master's fault, does not violate Constitution of the United States, Amendment 14.

9. MASTER AND SERVANT—WORKMEN'S COMPENSATION ACT—ASSUMPTION OF RISK.—If the master in accordance with Civil Code of 1913, section 3157, warns the employees of the dangers of their employment, the employer may defend on the grounds of assumption of risk and contributory negligence.

10. MASTER AND SERVANT—WORKMEN'S COMPENSATION ACT—LIMITATION OF LIABILITY.—In view of Constitution, article 18, section 6, providing that the amount recovered shall not be subject to any statutory limitation, and article 2, section 31, providing that no law shall be enacted limiting the amount of damages to be recovered for causing the death or injury of any person, Civil Code of 1913, title 14, chapter 6, making the employer liable for all injuries to employees without the fault of employees and regardless of the employer's fault, is not invalid for failure to limit the amount which may be recovered.

11. WITNESSES—PRIVILEGE—PHYSICIANS.—Where an injured servant has not referred in his testimony or pleadings to the statements of his physician, such physician, though employed by the master, can testify neither to the servant's communication to him nor his opinion arising from an examination of the servant.

APPEAL from a judgment of the Superior Court of the county of Gila. G. W. Shute, Judge. Affirmed.

### STATEMENT OF FACTS BY THE COURT.

The appellee commenced this action to recover damages for alleged injuries received by him on June 28, 1914, while occupied in the performance of his underground duties in the course of his employment by the appellant in appellant's mines. The injury suffered was inflicted at the time he opened a valve to admit compressed fresh air into a compartment of the mine to the end that the working be cleared of foul air, permitting the workmen there to proceed with their mining. When the said valve was opened by the ap-

pellee, the air escaping therefrom under heavy pressure struck appellee's face and cast dirt or other substances into his eyes, causing injuries thereto. Negligence is not asserted as a cause of the injuries, but plaintiff alleges that said accident was due to a condition or conditions of plaintiff's said occupation while an employee in the service of the defendant; that said employment was a hazardous occupation; that said injury was not caused in whole or in part by the negligence of the plaintiff; and that this action is brought under the employers' liability law. Chapter 6, tit. 14, Revised Statutes of Arizona, Civil Code 1913.

The defendant in defense to the action asserts that chapter 6, title 14, of the Civil Code of Arizona of 1913, upon which the action is based, is void for the reason that the same attempts to create a liability without fault, and therefore would deprive this defendant as an employer of its property without due process of law, and would deny the equal protection of the laws, in violation of section 4 of article 8 of the state Constitution, and of section 1 of the Fourteenth Amendment to the Constitution of the United States; and for these reasons the complaint fails to state facts sufficient to constitute a cause of action.

The further defenses of negligence by the plaintiff as the sole cause of the injury, the contributory negligence of the plaintiff in that he failed to timely and properly treat the injuries inflicted upon his eyes, which delay enhanced the damages thereto, the assumption of the risk by plaintiff, the defendant asserting that the injury resulted from an obvious and ordinary risk of the occupation, and, the defendant alleging that the plaintiff's remedy and defendant's liability, if any, are fixed by chapter 7 of title 14 of the compensation law, and not fixed by chapter 6 of title 14, upon which the action is based. The court disallowed all of defendant's objections to proceeding under the employers' liability law (chapter 6, title 14), based on constitutional grounds, and a trial of the cause resulted in a verdict for plaintiff in the sum of $5,500, less the amount, $262.47, concededly paid to plaintiff by the defendant. The court deducted said $262.47, the said amount paid to plaintiff from the said amount found as damages, without objection, and rendered judgment for plain-

tiff for the sum of $5,237.53 and costs. From such judgment and from an order refusing a new trial, defendant appeals.

Mr. Edward W. Rice, for Appellant.

Mr. A. C. McKillop and Mr. Geo. F. Senner, for Appellee.

CUNNINGHAM, J. (After Stating the Facts as Above).— The appellee moves the dismissal of this appeal upon the grounds that the appellant failed to take an appeal before filing an appeal bond.

The judgment in this case was ordered entered on the twenty-ninth day of March, 1915. The motion for a new trial was denied April 12, 1915. The appeal bond including a provision for superseding the execution of the judgment was filed on August 30, 1915. On September 27, 1915, the appellant gave its notice of appeal from the said order refusing a new trial and from said judgment. The appellee contends that because the bond was filed before the notice of appeal was given, that at the time the bond was filed no appeal had been taken, and that the bond was therefore prematurely filed, and such filing of the bond does not serve any purpose of appeal.

An appeal may be taken from a final judgment of the superior court in a civil action at any time within six months after the rendition of the judgment. Paragraph 1233, Civil Code of Arizona 1913. The appeal is taken by giving a notice of appeal, either in open court or in writing substantially in the form prescribed by paragraph 1235 of the Civil Code of 1913, and the appeal is perfected when the notice of appeal has been given and the appeal bond, or affidavit in lieu thereof, has been filed within the time in which the appeal may be taken, that is, within six months after the rendition of the final judgment. Paragraph 1236, Civil Code 1913. The appeal is perfected on the date when both the notice of appeal has been given and the appeal bond, or affidavit in lieu thereof, has been filed, or the date upon which the notice of appeal is given in cases in which no appeal bond is required. Paragraph 1237, Civil Code 1913.

The performance of both of these acts within six months after the rendition of the judgment serves to effect a removal of the cause from the superior courts to the Supreme Court.

The matter of the removal of the cause from the lower to the higher court for review is the important purpose of the appeal. The order in which these necessary acts are to be performed so that the cause is effectually removed from the lower court to the higher, and by which the lower court is divested of jurisdiction over the cause, and the appellate court acquires jurisdiction over the cause, is not made important by the statute. The statute leaves the matter of the order of performing each of these necessary acts of removal to the pleasure of the party desiring to appeal, and only limits the time within which he must perform both acts necessary to the accomplishment of the appeal to the period of six months from the date of the rendition of the judgment. *Wores* v. *Preston,* 4 Ariz. 92, 77 Pac. 617, I think correctly decided the identical question here presented 24 years ago, and that decision has remained the law to this day.

The appellee contends that the giving of the notice is the essential act of taking an appeal, and that the filing of a bond at a time prior to the time of giving of the notice of appeal is not equivalent in law to the filing of such bond after the appeal is taken, and that the appeal must be first taken, and thereafter the bond must be filed in order to effect an appeal. It is quite clear from the statutes that the giving of the notice of appeal is an act essential to taking an appeal. It is also quite clear from the statutes that the furnishing of an appeal bond, or affidavit in lieu of such bond, as the case may be, is essential to perfecting an appeal. The purpose of the statute requiring an appeal bond to be given is to protect the rights of the appellee pending the appeal. The parties may by written stipulation waive the giving of an appeal bond, and such waiver of the bond does not affect the appeal. Paragraph 1255, Civil Code 1913.

The appellee had the right to object to the appeal bond on the grounds of its insufficiency for the reasons of any error, defect, or insufficiency at any time within ten days after the filing of such bond, by giving notice of the errors, defects, and insufficiencies in such bond of which he complains, and, failing to give such notice, all errors and defects or insufficiencies in any appeal bond are deemed waived. Paragraph 1253, Civil Code 1913. Hence the time of filing the appeal bond is important as fixing the time within which the appellee may object to errors, defects, and insufficiencies therein.

Until the notice of appeal is given, the appellee's rights in the judgment are unaffected, even though an appeal bond has been deposited by the appellant with the files in the cause. If appellee has knowledge that such bond has been deposited with the papers of the cause, he is not required to object to the sufficiency of such bond until he is notified as required by law that the adverse party has taken an appeal. When the notice of appeal is given and the appeal bond is present in the cause, the adverse party then may object to the sufficiency of the appeal bond within the time provided; else he waives defects, and the appeal is perfected, and the jurisdiction over the cause is transferred. The presence of the appeal bond in the files of the court at the time the notice of the appeal is given is a sufficient filing of the appeal bond to require the adverse party, the appellee, to examine it for errors, defects, and insufficiencies, and if any are found, to then raise objections thereto. If no objections on the grounds of defects, errors, or insufficiencies are raised by the appellee within ten days thereafter the bond is deemed effective as an appeal bond to accomplish a removal of the cause from the lower to the higher court. The obligors on the bond may not be heard to question their liability, and the appellee is furnished the protection pending appeal which the statutes are intended to give to him.

The appellee contends that in this case the bond filed is in form a *supersedeas* bond, and if an adverse party be permitted to file such a bond, and thereby suspend the execution of a judgment before the appellee has notice of the taking of an appeal, the appellee suffers a wrong. This is assuming that a *supersedeas* bond filed before an appeal is taken has the effect of suspending a judgment from the time of the filing of the bond. Such is not the effect of the depositing of such bond in the cause. The execution of the judgment may not be suspended by giving a *supersedeas* bond until an appeal is taken from the judgment. Paragraph 1243, Civil Code 1913. In this case, however, on April 5, 1915, the court ordered a stay of execution for 60 days, and on the first day of June, 1915, the court ordered the execution further stayed until the first day of September, 1915. The execution of the judgment in this cause was not suspended by the filing of the *supersedeas* bond on August 30, 1915, from that date until September 27, 1915, when the notice of appeal was given, but

the execution was stayed by the order of the court as a fact until September 1, 1915. Whether the judgment was open to execution from September 1 to September 27, 1915, is a matter not presented nor urged on this record. Certainly the fact that a bond in form was deposited with the papers in the cause purported to suspend the execution of the judgment did not have that effect until the appeal was taken. The mere fact that the appeal bond was deposited with the papers in the cause at a time after the motion for a new trial has been denied, and prior to the time of giving notice of appeal, is no grounds for dismissing the appeal; the bond and notice having been placed in the lower court within the time required for taking an appeal certainly perfected the appeal. The motion is therefore denied.

The principal question presented in this record and contested on this appeal is whether the employers' liability law (chapter 6, title 14, Civil Code of Arizona of 1913) is constitutionally valid. The appellant first challenged the validity of the statute by a general demurrer, which was overruled. It objected to the introduction of any testimony upon the same grounds. At the close of the evidence it requested a directed verdict in its favor, and in its motion for a new trial the same grounds were urged. The appellant states in its opening argument that:

"The first three assignments of error involve the single overshadowing question of the invalidity of the liability law, and will be considered together."

The appellant contends, and I think his contention is correct, that the liability statute must be construed as one creating a liability for accidents resulting in injuries to the workmen engaged in hazardous occupations due to the risks and hazards inherent in such occupations, without regard to the negligence of the employer, as such negligence is understood in the common law of liability; in other words, such statute creates a liability for accident arising from the risks and hazards inherent in the occupation without regard to the negligence or fault of the employer. The cause was tried upon that theory, and the judgment must stand or fall according to the validity or invalidity of the said statute. The appellant makes the broad statement that "a statute creating such a liability cannot stand." At the threshold of the discussion we encounter the inquiry of the power of the legis-

lature to enact liability laws which in effect modify the common law of liability based upon negligence or fault; liability because of a failure on the part of the employer to perform a duty owing to the employee.

Chapter 6 of title 14 was enacted as a response to the mandate contained in section 7 of article 18 of the state Constitution, reading as follows:

"To protect the safety of employees in all hazardous occupations, in mining, smelting, manufacturing, railroad or street railway transportation, or any other industry the legislature shall enact an employers' liability law, by the terms of which any employer, whether individual, association, or corporation shall be liable for the death or injury, caused by any accident due to a condition or conditions of such occupation, of any employee in the service of such employer in such hazardous occupation, in all cases in which such death or injury of such employee shall not have been caused by the negligence of the employee killed or injured."

This provision is clearly one mandatory upon the legislative branch of the state government as to all the requirements set forth in that provision for affirmative action by the legislature. The framers of the Constitution, and the people adopting the Constitution, by this section clearly set forth and made known to the legislative department, the legislative branch of the state government, that the public policy of this state and of the people of the state is that employers of labor in hazardous occupations of all kinds of such industries shall be liable in damages to such employee as shall be injured when the injury is caused by any accident due to a condition or conditions of such occupations without regard to negligence of the employer as the cause. The only limitation or restriction thrown about the legislature's duty in this respect is that in the enactment of employers' liability laws or other laws of such nature, no employer shall be made liable for the death or injury of any employee, when such death or injury shall have been caused by the negligence of the employee killed or injured.

The form of our state government furnishes no means by which the legislature may be coerced into obeying such mandate so made its duty. The courts have no such power. This is certainly true. *Adams* v. *Howe,* 14 Mass. 340, 7 Am. Dec. 216, 220; *Holbrook* v. *Holbrook,* 1 Pick. (Mass.) 248; *In re*

*Opinions of Justices,* 68 Me. 582; *School Board* v. *Patten,* 62 Mo. 444; *Ex parte Alabama,* 52 Ala. 231, 23 Am. Rep. 567, 573; *Sawyer* v. *Gilmore,* 109 Me. 169, 83 Atl. 673; *In re State Census,* 6 S. D. 540, 62 N. W. 129. From these authorities and others that may be cited, and from the very nature of the matter, the legislative power of the state is not controlled. nor controllable by simple mandatory directions given by means of constitutional provisions which direct action, but do not restrict action on the part of the legislature. When the legislature is not constitutionally restricted, it may act or not as the occasion may seem proper, and in acting may pass any law the legislature deems for the welfare of the state, unless prohibited by some positive constitutional provision, and all such laws not so prohibited are valid.

The provisions of the Constitution are all deemed mandatory, but that does not mean that the judicial branch of the state government has been confided with the power to enforce all mandatory provisions contained in the Constitution directed to the legislative and executive branches of the state government of co-ordinate powers with the judicial branch. These matters are elementary and evident. So the constitutional mandate, *supra,* in no manner controls the legislature in the adoption by it of any provision of the employers' liability law, unless it attempts to place liability upon an employer for the death or injury of an employee killed or injured by such employee's own negligence. Appellant contends that the statute in question is in conflict with section 1 of the Fourteenth Amendment to the United States Constitution, prohibiting laws which deprive any person of property without due process of law, and that deny persons the equal protection of the laws, for the reason chapter 6, title 14, declares that an employer is liable for personal injuries suffered by an employee in the absence of any fault on the employer's part in causing such injury.

In paragraph 3147 of chapter 4 of title 14 of the Civil Code of Arizona of 1913, it is declared in no uncertain language that:

"Employment in all underground mines, underground workings, open cut workings, open pit workings, in or about, and in connection with, the operation of smelters, reduction works, stamp-mills, concentrating-mills, chlorination processes, cyanide processes, cement works, rolling-mills, rod-mills and

at coke ovens and blast furnaces, is hereby declared to be injurious to health and dangerous to life and limb.''

Hence laws enacted which reasonably regulate such employments are regulations within the police powers of the state. Again, paragraph 3156 of chapter 6, title 14, of the Civil Code of Arizona of 1913, places certain enumerated occupations within the police powers of regulation by the state, thus:

''3156. The occupations hereby declared and determined to be hazardous within the meaning of this chapter are as follows: . . .

''(2) All work when making, using or necessitating dangerous proximity to gunpowder, blasting powder, dynamite, compressed air, or any other explosive. . . .

''(8) All work in or about quarries, open pits, open cuts, mines, ore reduction works and smelters.''

Paragraph 3155, Id., contains the following declaration of public policy, to wit:

''By reason of the nature and conditions of, and the means used and provided for doing the work in, said occupations, such service is especially dangerous and hazardous to the workmen therein, because of risks and hazards which are inherent in such occupations and which are unavoidable by the workmen therein.''

Paragraph 3157, Id., provides that:

''Every employer, whether individual, firm, association, company or corporation, employing workmen in such occupation, of itself or through an agent, shall by rules, regulations or instructions, inform all employees in such occupations as to the duties and restrictions of their employment, to the end of protecting the safety of employees in such employment.''

Thereby the statute declares the occupations enumerated as inherently hazardous and dangerous to workmen engaged therein, and declares that which is evident to every observant person that the risks and hazards incident to such occupations are unavoidable by the workmen engaged therein. Such occupations designated as hazardous and dangerous, and inherently unsafe, are deemed for that reason injurious to the health and dangerous to life and limb of the workmen engaged therein, and clearly fall within the police powers of the state for regulation and control. To the end that the workmen in said occupations may be protected in health, life, and limb

the law casts upon the employer the specific duty to promulgate rules, regulations, and instructions by which all employees in such occupations are informed as to their duties and restrictions of their employment. The safety of the employee engaged in the hazardous occupations is the dominant idea running through the statute. Paragraph 3158 of the Civil Code sets forth the conditions, which, occurring, fix the employer's liability for personal injuries suffered by employees, to wit:

"When in the course of work in any of the employments or occupations enumerated in the preceding section (paragraph 3156), personal injury or death by any accident arising out of and in the course of such labor, service and employment, and due to a condition or conditions of such occupation or employment, is caused to or suffered by any workman engaged therein, in all cases in which such injury or death of such employee shall not have been caused by the negligence of the employee killed or injured, then the employer of such employee shall be liable in damages to the employee injured, or, in case death ensues, to the personal representative. . . . "

The conditions occurring which create liability to respond in damages are: That the person injured must be in the service of the proprietor carrying on the hazardous industry; that the industry to be dangerous and hazardous must be one which fairly comes within one or more of the industries enumerated in paragraph 3156; that at the time the injury was suffered, the employee injured must be engaged in the performance of some duty of his employment; that the accident causing the injury suffered arose from the dangerous and hazardous nature of the service required in the industry as such is ordinarily carried on, and in carrying on such service necessary risks and dangers inherent therein are present as a menace to the workman without knowledge of which and without incurring the danger of injury therefrom he cannot perform such required service. In other words, this statute creates a liability of the master to damages suffered from any accident befalling his servant while engaged in the performance of duties in dangerous occupations without requiring the negligence of the master to be shown as an element of the right to recover; and it likewise takes away from the master his common-law right of defense of assumption of ordinary risk by the servant, and leaves to the master the right to de-

fend upon the grounds that the servant assumed the ordinary risks other than risks inherent in the occupation.

The statute clearly does not require as a condition of liability that the accident causing the injury proximately resulted from the master's negligence, and it as clearly does exclude as a matter of defense the assumption of all ordinary and extraordinary risks inherent in the occupation. Such risks and dangers as are inherent in the occupation are declared to be unavoidable risks and dangers, and therefore it necessarily follows that the employee in entering upon his duties does not assume such ordinary inherent risks, although known to him. Such risks as he may assume must be risks and dangers other than risks and dangers inherent in the occupation. As was said by Justice PITNEY in *New York C. R. Co.* v. *White,* 243 U. S. 188, 61 L. Ed. 667, 37 Sup. Ct. Rep. 247:

"The scheme of the act is so wide a departure from common-law standards respecting the responsibility of employer to employee that doubts naturally have been raised respecting its constitutional validity. The adverse considerations urged or suggested in this case and in kindred cases submitted at the same time are: (a) That the employer's property is taken without due process of law, because he is subjected to a liability for compensation without regard to any neglect or default on his part or on the part of any other person for whom he is responsible, and in spite of the fact that the injury may be solely attributable to the fault of the employee. . . . In support of the legislation, it is said that the whole common-law doctrine of employer's liability for negligence, with its defenses of contributory negligence, fellow-servant's negligence, and assumption of risk, is based upon fictions, and is inapplicable to modern conditions of employment; that in the highly organized and hazardous industries of the present day the causes of accident are often so obscure and complex that in a material proportion of cases it is impossible by any method correctly to ascertain the facts necessary to form an accurate judgment, and in a still larger proportion the expense and delay required for such ascertainment amount in effect to a defeat of justice; that, under the present system, the injured workman is left to bear the greater part of industrial accident loss, which, because of his limited income, he is unable to sustain, so that he and those dependent upon him

are overcome by poverty and frequently become a burden
upon public or private charity. . . . ''

The statute under consideration in the White case is a
compensation statute of the state of New York. The con-
stitutional question involved in that case, as shown by the
foregoing statement of the matter, is the identical question
raised in this case, viz., the power of the state to create a lia-
bility against the employer for accidental injuries to em-
ployees which occur without fault of the employer. In dis-
cussing this question the court said, after stating the opposing
contentions:

''In considering the constitutional question, it is necessary
to view the matter from the standpoint of the employee as
well as from that of the employer. For, while plaintiff in
error is an employer, and cannot succeed without showing
that its rights as such are infringed (*Plymouth Coal Co. v.
Pennsylvania,* 232 U. S. 531, 544, 58 L. Ed. 713, 719, 34 Sup.
Ct. Rep. 359; *Jeffrey Mfg. Co.* v. *Blagg,* 235 U. S. 571, 576, 59
L. Ed. 365, 368, 35 Sup. Ct. Rep. 167; 7 N. C. C. A. 570) ; yet,
as pointed out by the court of appeals in the *Jensen Case,* 215
N. Y. 526 [Ann. Cas. 1916B, 276, L. R. A. 1916A, 403, 109
N. E. 600], the exemption from further liability is an essen-
tial part of the scheme, so that the statute, if invalid as
against the employee, is invalid as against the employer.
The close relation of the rules governing responsibility as
between employer and employee to the fundamental rights
of liberty and property is, of course, recognized. But those
rules, as guides of conduct, are not beyond alteration by legis-
lation in the public interest. No person has a vested interest
in any rule of law, entitling him to insist that it shall remain
unchanged for his benefit. *Munn* v. *Illinois,* 94 U. S. 113, 134,
24 L. Ed. 77, 87; *Hurtado* v. *California,* 110 U. S. 516, 532,
28 L. E'd. 232, 237, 4 Sup. Ct. Rep. 111, 292; *Martin* v. *Pitts-
burg & L. E. R. Co.,* 203 U. S. 284, 294, 8 Ann. Cas. 87, 51
L. Ed. 184, 191, 27 Sup. Ct. Rep. 100; *Second Employers'
Liability Cases (Mondou* v. *New York, N. H. & H. R. Co.),*
223 U. S. 1, 50, 38 L. R. A. (N. S.) 44, 56 L. Ed. 327, 346,
32 Sup. Ct. Rep. 169, 1 N. C. C. A. 875; *Chicago & A. R. Co.*
v. *Tranbarger,* 238 U. S. 67, 76, 59 L. Ed. 1204, 1210, 35 Sup.
Ct. Rep. 678. The common law bases the employer's liability
for injuries to the employee upon the ground of negligence;
but negligence is merely the disregard of some duty imposed

·by law, and the nature and extent of the duty may be modified by legislation, with corresponding change in the test of negligence. Indeed, liability may be imposed for the consequences of a failure to comply with a statutory duty, irrespective of negligence in the ordinary sense; safety appliance acts being a familiar instance. *St. Louis, I. M. & S. R. Co.* v. *Taylor,* 210 U. S. 281, 295, 52 L. Ed. 1061, 1068, 28 Sup. Ct. Rep. 616, 21 Am. Neg. Rep. 464; *Texas & P. R. Co.* v. *Rigsby,* 241 U. S. 33, 39, 43, Ann. Cas. 1917B, 283, 60 L. Ed. :874, 877, 878, 36 Sup. Ct. Rep. 482.''

The court then discusses the liability of the employer according to the maxim *respondeat superior,* the employer's immunity from liability under the common-law doctrine of fellow-servant, the general doctrine of assumption of risk, and the doctrine of contributory negligence, and says:

. ''But it is not necessary to extend the discussion. This court repeatedly has upheld the authority of the states to .establish by legislation departures from the fellow-servant rule and other common-law rules affecting the employer's liability for personal injuries to the employee. *Missouri P. R. Co.* v *Mackey,* 127 U. S. 205, 208, 32 L. Ed. 107, 108, 8 Sup. Ct. Rep. 1161; *Minneapolis & St. L. R. Co.* v. *Herrick,* 127 U. S. 210, 32 L. Ed. 109, 8 Sup. Ct. Rep. 1176; *Minnesota Iron Co* v. *Kline,* 199 U. S. 593, 598, 50 L. Ed. 322, 325, 26 ·Sup. Ct. Rep. 159, 19 Am. Neg. Rep. 625; *Tullis* v. *Lake Erie & W. R. Co.,* 175 U. S. 348, 44 L. Ed. 192, 20 Sup. Ct. Rep. ·136; *Louisville & N R. Co.* v. *Melton,* 218 U. S. 36, 53, 47 .L. R. A. (N S.) 84, 54 L. Ed. 921, 928, 30 Sup. Ct. Rep. 676; .*Chicago, I. & L. R. Co.* v. *Hackett,* 228 U. S. 559, 57 L. Ed. .966, 33 Sup. Ct. Rep. 581; *Wilmington Star Min. Co.* v. *Fulton,* 205 U. S. 60, 73, 51 L. Ed. 708, 715, 27 Sup. Ct. Rep. 412; .*Missouri P. R. Co.* v. *Castle,* 224 U. S. 541, 544, 56 L. Ed. 875, .878, 32 Sup: Ct. Rep. 606. A corresponding power on the :part of Congress, when· legislating within its appropriate ·sphere, was sustained in *Second Employers' Liability Cases (Mondou* v. *New York, N. H. & H. R. Co.*), 223 U. S. 1, 38 .L. R. A. (N. S.) 44, 56 L. Ed. 327, 32 Sup. Ct. Rep. 169, 1 .N. C. C. A. 875. And see *El Paso & N. E. R. Co.* v. *Gutierrez,* 215 U. S. 87, 97, 54 L. Ed. 106, 111, 30 Sup Ct. Rep. 21; *Baltimore & O. R. Co.* v. *Interstate Commerce Commission,* 221 :U. S. 612, 619, 55 L. Ed. 878, 883, 31 Sup. Ct. Rep. 621. It is :true that in the case of the statutes thus sustained there were

reasons rendering the particular departures appropriate. . Nor is it necessary, for the purposes of the present case, to say that a state might, without violence to the constitutional guaranty of 'due process of law,' suddenly set aside all common-law rules respecting liability as between employer and employee, without providing a reasonably just substitute. . . . It perhaps may be doubted whether the state could abolish all rights of action, on the one hand, or all defenses, on the other, without setting up something adequate in their stead. No such question is here presented, and we intimate no opinion upon it.''

Discussing the particular features of the case at some length, the court then says:

''Much emphasis is laid upon the criticism that the act creates liability without fault. This is sufficiently answered by what has been said, but we may add that liability without fault is not a novelty in the law. The common-law liability of the carrier, of the innkeeper, or him who employed fire or other dangerous agency or harbored a mischievous animal, was not dependent altogether upon questions of fault or negligence. Statutes imposing liability without fault have been sustained. *St. Louis & S. F. R. Co.* v. *Mathews,* 165 U. S. 1, 22, 41 L. Ed. 611, 619, 17 Sup. Ct. Rep. 243; *Chicago, R. I, & P. R. Co.* v. *Zernecke,* 183 U. S. 582, 586, 46 L. Ed. 339, 340, 22 Sup. Ct. Rep. 229. We have referred to the maxim, *respondeat superior.* In a well-known English case, *Hall* v. *Smith,* 2 Bing. 156, 160, 130 Eng. Reprint, 265, 9 J. B. Moore, 326, 2 L. J. C. P. 113, this maxim was said by Best, C. J., to be 'bottomed on this principle, that he who expects to derive advantage from an act which is done by another for him must answer for any injury which a third person may sustain from it.' . . . In excluding the question of fault as a cause of the injury, the act in effect disregards the proximate cause and looks to one more remote—the primary cause, as it may be deemed—and that is, the employment itself. For this, both parties are responsible, since they voluntarily engage in it as coadventurers, with personal injury to the employee as a probable and foreseen result. . . . In our opinion, laws regulating the responsibility of employers for the injury or death of employees, arising out of the employment, bear so close a relation to the protection of the lives and safety of those concerned that they properly may be regarded as com-

ing within the category of police regulations. *Sherlock* v. *Alling*, 93 U. S. 99, 103, 23 L. Ed. 819, 820; *Missouri, P. R. Co.* v. *Castle*, 224 U. S. 541, 545, 56 L. Ed. 875, 879, 32 Sup. Ct. Rep. 606.''

Thus, from the court of ultimate authority over questions affecting constitutional guaranties and rights, we find answers to all of the arguments advanced by the appellant why chapter 6 of title 14 is in conflict with the Fourteenth Amendment of the Constitution of the United States. I am of the opinion that the statute is free from the objections urged by appellant on the authority of such case.

It is undoubtedly true that our statute which limits the common-law rule of assumption of ordinary risks, to risks other than risks and hazards which are inherent in such occupations and which are unavoidable by the workman thereby contracts the scope of the employer's defense in such cases; but the defense of assumption of risks other than ordinary risks and hazards and risks and hazards which are not inherent in such occupations still remains open to him as before, and may be pleaded in defense as before, only the question must be determined by the jury as a fact and not by the court as a question of law. Hence, if the employer ''shall by rules, regulations or instructions inform all employees in such occupations as to the duties and restrictions of their employment, to the end of protecting the safety of employees in such employment,'' as required by paragraph 3157, and during the course of such employment any employee so informed does an act beyond his duty or in violation of the restrictions of his employment dangerous in character, and suffers injury from an accident occurring, the employer may defend upon the grounds of both assumption of risk by the employee, and if the accident resulted from negligence the employer may interpose the defense of contributory negligence as the case may be. In either event the defense must be specially set forth and tried as an issue of fact. While the statute restricts the employer's rights of defense, it does not abolish such rights.

The appellant questions the validity of the statute because the amount recoverable is not limited thereby. Section 6 of article 18, state Constitution, provides that:

''The amount recovered shall not be subject to any statutory limitation.''

And section 31, article 2, of the state Constitution, provides that:

"No law shall be enacted in this state limiting the amount of damages to be recovered for causing the death or injury of any person."

A statute which would attempt to forcibly limit the amount recoverable for personal injuries suffered would be in direct conflict with these plain, simple provisions of the state Constitution. Statutes which provide a limited amount in satisfaction of damages and leave to the parties interested the right to elect to abide by its provisions are controlled by other principles of law and justice, and should not be confused with statutes imperative in their terms. The appellant contends as a further ground for reversal that the court erred in rejecting the evidence of Dr. Bacon as to the condition of appellee's eyes, as the doctor found such condition to be from a personal examination of appellee a short time after the accident. With regard to the rejection of this testimony the record discloses that witness, Dr. Bacon, was the superintendent in charge of appellant's hospital department when plaintiff was injured, and that plaintiff was treated for the injuries to his eyes under the supervision of Dr. Bacon, and to some extent plaintiff was treated personally by Dr. Bacon. Dr. Bacon testified fully and extensively as an expert in the matters of infections of wounds to the eyes and cause of such infections. He testified:

"I saw Mendez on the first day of July and inspected and saw his eyes. From my examination made of Mendez at that time I know what the condition of his eyes was. . . . Q. Now, Doctor, from your examination made at that time, state what the condition of his eyes was."

The plaintiff objected upon the ground that:

" . . . This is a privileged communication, and is also a privileged, you might say, examination; that the doctor is disqualified to testify as to what he discovered by the examination for the reason that the man was at that time under his professional care, and that the plaintiff has not consented to the testimony."

The court sustained the objection. The objection was based upon subdivision 5 of paragraph 1677, reading as follows:

"The following persons cannot be witnesses in a civil action: . . . (6) A physician or surgeon cannot be examined,

without the consent of his patient, as to any communication made by his patient with reference to any physical or supposed physical disease or any knowledge obtained by personal examination of such patient: Provided, that if a person offer himself as a witness and voluntarily testify with reference to such communications, that is to be deemed a consent to the examination of such physician or attorney.''

The supreme court of the United States had before it the interpretation and application of this statute in *Arizona & N. M. R. Co.* v. *Clark*, 235 U. S. 669, L. R. A. 1915C, 834, 59 L. Ed. 415, 35 Sup. Ct. Rep. 210, and placed a construction on the statute drawing a distinction between knowledge gained by the physician through verbal communications made to him by the patient, and knowledge gained through a personal examination of the patient. The patient may be deemed to have given consent to the doctor's testifying with regard to knowledge gained through verbal communications made by the patient when the patient has referred to such communications in his pleadings or in testimony, but such reference does not open the door to the physician to also testify as to his knowledge gained by a personal examination of the patient, and such is the testimony called for by the question. The construction placed on the statute by the court in the Clark case, and the application there made, are so evidently correct that I fully concur in both positions there taken, and adopt them as entirely applicable here within the correct understanding of the said statute.

The objection that the verdict is not sustained by the evidence does not point out wherein the failure of the evidence occurs. The claim is made that the verdict is excessive because it rests on the plaintiff's evidence, the testimony of the doctor having been excluded. In answer to such objection all the law requires the record to show is substantial evidence in support of the verdict. This is shown by the record. The matter of the weight of evidence is left with the jury solely, and the jury's determination of that matter will not be disturbed on appeal.

I find no reversible error in the record. Consequently, I am of the opinion the judgment must be affirmed.

FRANKLIN, C. J., concurs.

ROSS, J. (Dissenting).—The majority opinion states the facts upon which this case is based. It is clear therefrom the appellant was guilty of no negligent act. Indeed, it is not suggested either by pleadings or otherwise that the accident was caused by any act of appellant. On the contrary, the facts would seem to indicate a lack of caution or skill upon the part of appellee.

I agree with the majority opinion that the state is clothed with power to require the employer without fault to compensate his employee for injury or in case of his death, his dependents. This principle is too well settled to be now questioned. I am satisfied that the state legislature in the absence of constitutional limitations and directions as set forth in section 7, article 18, of the state Constitution could have enacted a law providing for compensation to employees injured without fault of the employer, along the general lines of the various compensation acts of the different states of the Union. I think also that under the provisions of section 7, article 18, it was possible to formulate a law giving compensation to the employee when injured without any fault of the employer. In other words, I am of the opinion that the mandate contained in said section and article of the Constitution is not violative of any provision of the Constitution of the United States. My quarrel is with the legislation under that mandate and not the mandate itself.

Chaper 6, title 14, of the Civil Code of 1913 creates a liability without fault but adopts no system or scale of compensation. It leaves the liability to be ascertained by a jury, as under the common-law action for tort. It injects incongruities as to defenses allowed the employer on account of the employee's negligence. These latter I will not discuss here, for whatever view is taken of them, they do not relieve the method of ascertaining the liability of serious and, in my opinion, fatal constitutional objections.

In the first place, I will consider the nature of this so-called employers' liability law. It is designated as such both by the Constitution and the legislature. There is not much in the name; the true test of what the right of action is, or was intended to be, must in this case, as in all others, be ascertained from the words used to describe and define it.

The Constitution directs the legislature to "enact an employer's liability law, by the terms of which any employer

. . . shall be *liable* for the death or injury caused by any accident due to a condition or conditions of such occupation, in all cases in which such death or injury of such employee shall not have been caused by negligence of the employee killed or injured." Section 7, article 18.

The liability enjoined and contemplated is one heretofore unknown to our laws. Manifestly it is not an employer's liability law in the sense in which those terms are generally used and understood, for the reason that liability laws are based on tort. They are in fact the common-law right of action for negligence with most of the defenses heretofore allowed abrogated or greatly modified. They do not undertake to create liability without fault, as is done by our legislation. *Rounsaville* v. *Central R. Co.*, 87 N. J. L. 371, 94 Atl. 392; *Winfield* v. *New York Cent. R. Co.*, 216 N. Y. 284, Ann. Cas. 1916A, 817, 110 N. E. 614; note to *Seaboard A. L. B. Co.* v. *Horton*, L. R. A. 1915C, 54.

These cases hold that a law making the employer liable without fault creates a new right of action unknown to the common law. The legislation is a new departure creating a new liability. It is said: "This legislation is wholly in derogation of the common law. It is legislation which awards compensation for the accidental industrial injuries to be added to the cost of production." *Andrejwski* v. *Wolverine Coal Co.*, 182 Mich. 298, Ann. Cas. 1916D, 724, 148 N. W. 684.

The liability contemplated by our Constitution being therefore a new liability, it was within the power and province of the legislature to fix and regulate it, with no limitation on that power except the employer be given the equal protection of the law, and that the method of ascertaining his liability be in accordance with due process of law.

In every other jurisdiction in this country except ours, where this new right of action has been created, the law has been called a "compensation law" and the award to the employee, or his dependents, has been called "compensation." The liability or compensation is based upon the average wages and the extent of the injury suffered by the employee. It is not an action to recover "damages" as are the common-law action for negligence and the action under the employers' liability law.

For some inexplainable reason the framers of our Constitution enjoined on the legislature the duty of enacting two laws for the same general purpose; namely, the creation of a liability of the employer without fault. See sections 7 and 8, article 18. The latter differs from the first principally in that it is called a "compensation law" and authorizes recovery whether the employee causes the injury or not. In both instances the employer is made liable without fault. In the one as well as the other, the liability of the employer is a new one.

Under the compensation act, chapter 7, title 14, of the Civil Code, the legislature provided a method of recompensing the employee for injury or death by an allowance based upon his ability as a wage-earner and the extent of his injury,—in that respect following the compensation laws of other states. The legislature designates the recompense for injury or death under the employers' liability act as "damages for personal injuries," evidently intending thereby that the damages recovered should be ascertained and measured by the common-law standard or by the rules governing in actions sounding in tort. In the matter and *quantum* of evidence to establish liability thereunder it is practically the same, if not identical, with the workmen's compensation law. The pecuniary liability is, however, unlimited. It contemplates a trial by jury whose only functions, necessarily in most cases, must be the fixing by their verdict the sum to be paid by the employer.

To an injured employee, or in case of his death, there are now open to him or his personal representatives or dependents three avenues of redress; first, the workmen's compensation law; second, the employers' liability law; and third, the common-law action for damages, supplemented by what is commonly known as the Lord Campbell Act. I have indicated somewhat of the nature of the first two. The status of the third or action for negligence, as it exists in this state at present, is as follows:

The common-law doctrine of fellow-servant is abrogated. The defense of contributory negligence and assumption of risks are questions of fact to be at all times left to a jury, and the right of action to recover damages for injuries may not be abrogated, nor may the amount of recovery be lim-

ited by statute.     Sections 4, 5, and 6, article 18, and section 31, article 2, Constitution.

These provisions of the Constitution were evidently intended to apply only to actions of negligence, in which the measure of damages were to be according to the rules of the common law.     Thus understood, the common-law action for damages for personal injury is so modified and changed as really and in fact to constitute what is generally known as the employers' liability law.

That the above constitutional provisions do not apply to or affect the newly created rights of action for compensation against the employer is evident, or else our Workmen's Compensation Act would be violative of the Constitution, in that it does limit the amount of recovery.     For like reasons I think they do not apply to the liability created by the statute known as the Employers' Liability Act.     This latter act creating new liability,—one not known to the common law and in derogation thereof,—it would seem that the power of the legislature to fix the measure of compensation in disregard of the common-law rule is as absolute as under the compensation act.

"The theory upon which the compensation law is based (which is now generally accepted) is that each time an employee is killed or injured there is an economic loss which must be made up or compensated in some way, that most accidents are attributable to the inherent risk of employment,—that is no one is directly at fault—that the burden of this economic loss should be borne by the industry rather than by society as a whole, that a fund should be provided by the industry from which a *fixed sum* should be set apart as every accident occurs to compensate the person injured or his dependents, for his or their loss."     (Italics mine.)     *State* v. *Industrial Com.*, 92 Ohio St. 434, 450, L. R. A. 1916D, 944, 111 N. E. 299.

The justification of such an economic rule and its substitution for the common law and employer's liability rule of damages for personal injury is variously stated by the courts, but all are based upon common ground: That the state owes the duty to its members of preventing their becoming public charges by reason of injuries sustained in the industries of modern civilization, the duty to stop the waste of time and money in protracted and bitterly contested lawsuits, and

thereby remove one of the most potent causes of hatred, animosity, and distrust between employer and employee, the duty to prevent unjust and bogus claims supported and opposed by perjury and subornation, and to see that *bona fide* claims for compensation are amicably and expeditiously settled, the duty of relieving the state from the expense of personal injury litigation, and, finally, to see that the injured or his dependents receive not a moiety but all that the employer is required to pay. *Appeal of Hotel Bond Co.*, 89 Conn. 143, 146, 93 Atl. 245; *Cunningham* v. *Northwestern Imp. Co.*, 44 Mont. 180, 204, 119 Pac. 554, 1 N. C. C. A. 720; *Hawkins* v. *Bleakley*, 220 Fed. 378, 379; *Stertz* v. *Industrial Ins. Com.*, 91 Wash. 588, 158 Pac. 256, 258; *Lewis & Clark County* v. *Industrial A. C. C. Bd.*, 52 Mont. 6, L. R. A. 1916D, 628, 155 Pac. 268.

The reasons given by the courts to sustain the compensation laws, it is apparent from what has been said, cannot be invoked in support of our so-called employers' liability law. None of the evils ''of a difficult problem, affecting one of the most important of social relations'' is done away with.

The majority opinion bases its judgment entirely upon the reasoning of the supreme court in *New York C. R. Co.* v. *White*, 243 U. S. 188, 61 L. Ed. 667, 37 Sup. Ct. Rep. 247, 13 N. C. C. A. 943, in which was considered the New York Workmen's Compensation Act. It is said in that case that the Workmen's Compensation Act was a *substituted system* devised to compensate employees or their dependents for injuries in certain hazardous businesses, the measure of damages being based upon the loss of earning power, having regard to the previous wage and the character and duration of the disability, and, in case of death, benefits according to the dependency of the surviving wife, husband, or infant child. Our liability act is *not* a *substitution* for former rights and remedies. It creates a new right, not to take the place of old ones, but supplemental or cumulative in its nature. It leaves open to the injured employee or his personal representatives or dependents the common-law action of negligence as modified by our Constitution, as also the right to claim under the compensation act.

Justice PITNEY, in the White case, said that as between the employer and the employee, the common-law defenses of the negligence of a coemployee, assumed risk, and contribu-

tory negligence could be completely abolished without violating any fundamental right of the employer or the law of the land. He cites in support thereof a number of cases upholding the state and federal departures from the common-law rules of liability of the employer, but he says, at page 252:

"It is true that in the case of the statutes thus sustained there were reasons rendering the particular departures appropriate. Nor is it necessary, for the purposes of the present case, to say that a state might, without violence to the constitutional guaranty of 'due process of law,' suddenly set aside all common-law rules respecting liability as between employer and employee, without providing a reasonably just substitute. Considering the vast industrial organization of the state of New York, for instance, with hundreds of thousands of plants and millions of wage-earners, each employer, on the one hand, having embarked his capital, and each employee, on the other, having taken up his particular mode of earning a livelihood, in reliance upon the probable permanence of an established body of law governing the relation, it perhaps may be doubted whether the state could abolish all rights of action, on the one hand, or all defenses, on the other, *without setting up something adequate in their stead.* No such question is here presented, and we intimate no opinion upon it." (Italics mine.)

There is an intimation here that even the common-law defenses of negligence of a fellow-servant, assumed risk, and contributory negligence may not be arbitrarily abolished without substituting in place thereof some rule or system befitting the conditions and situation, and when it is considered that the act we now have in hand is not substitutional— that it does not "set aside one body of rules only to establish another system in its place," but that it is purely and simply cumulative, affording an additional, new, and heretofore unknown right of action with practically all defenses of the employer abrogated, I think it is quite the supposititious case alluded to by Justice PITNEY. This legislation has not attempted to "abolish all rights of action," but has created a new and additional right of action allowing no defense thereto except that it appear that the accident inflicting the injury was caused by the negligence of the employee. To say, as the majority opinion does, that the negligence that

will defeat a recovery by the employee may be one of assumption or contribution is a violation and repudiation of the very definition of the right of action as defined. It certainly does not mean the negligence of working in a dangerous or hazardous place, or with careless, unskilled, or incompetent coemployees. Neither does it mean contributory negligence, for in that case the injury would be caused by the combined negligence of the employer and employee and not ''by the negligence of the employee killed or injured.'' It means a negligence by the employee at the instant of the injury or death and without which there would have been no accident. It must mean some intentional or culpable act or omission. But whatever view may be taken of that, the employer is denied the right to defend by showing that the accident was through no fault of his, and an employee whose negligence caused the injury may fall back on the Workmen's Compensation Act. If it is ''due to a condition or conditions of the occupation,'' he may sue under the Employers' Liability Act.

In the White case it was decided that the state was competent to set aside one body of rules and to establish another system in its place. There the common-law rules governing the liability of the employer to the employee were abrogated and in lieu thereof a system of compensation substituted. On the substituted system it was said:

''Of course, we cannot ignore the question whether the new arrangement is *arbitrary* and *unreasonable*, from the standpoint of natural justice. Respecting this, it is important to be observed that the act applies only to disabling or fatal personal injuries received in the course of hazardous employment in gainful occupation. Reduced to its elements, the situation to be dealt with is this: Employer and employee, by mutual consent, engage in a common operation intended to be advantageous to both; the employee is to contribute his personal services, and for these is to receive wages, and, ordinarily, nothing more; the employer is to furnish plant, facilities, organization, capital, credit, is to control and manage the operation, paying the wages and other expenses, disposing of the product at such prices as he can obtain, taking all the profits, if any there be, and, of necessity, bearing the entire losses. . . . It is plain that, on grounds of natural justice, it is not unreasonable for the state, while relieving the employer from responsibility for *damages measured by*

*common-law standards* and payable in cases where he or those for whose conduct he is answerable are found to be at fault, to require him to contribute a *reasonable amount,* and *according to a reasonable* and *definite scale,* by *way* of compensation for the loss of earning power incurred in the common enterprise, irrespective of the question of negligence, instead of leaving the entire loss to rest where it may chance to fall,— that is, upon the injured employee or his dependents. Nor can it be deemed *arbitrary* and *unreasonable,* from the standpoint of the employee's interest, to supplant a system under which he assumed the entire risk of injury in ordinary cases, and in others had a right to recover an amount more or less speculative upon proving facts of negligence that often were difficult to prove, and *substitute* a *system* under which, in all ordinary cases of accidental injury, he is sure of a *definite* and *easily ascertained compensation,* not being obliged to assume the entire loss in any case, but in all cases assuming any loss beyond the prescribed scale. . . . In excluding the question of fault as a cause of injury, the act in effect disregards the proximate cause and looks to one more remote,— the primary cause, as it may be deemed,—and that is, the employment itself. For this, both parties are responsible, since they voluntarily engage in it as coadventurers, with personal injury to the employee as a probable and foreseen result. . . . Viewing the entire matter, it cannot be pronounced *arbitrary* and *unreasonable* for the state to impose upon the employer the absolute duty of making a *moderate* and *definite compensation* in money to every disabled employee, or, in case of his death, to those who are entitled to look to him for support, in lieu of the common-law liability confined to cases of negligence.

"This, of course, is not to say that *any scale of compensation,* however insignificant, on the one hand, or onerous, on the other, would be supportable. In this case, no criticism is made on the ground that the compensation prescribed by the statute in question is unreasonable in amount, either in general or in the particular case. Any question of that kind may be met when it arises." (Italics mine.)

Our liability law does not relieve "the employer from responsibility for damages measured by common-law standards." It does not "require him to contribute a reasonable amount, according to a reasonable and definite scale, by way

of compensation for loss of earning power." It is not a substituted system assuring the employee "a definite and easily ascertained compensation," and he is not required to assume "any loss beyond the prescribed scale." It violates the recognized power of "the state to impose upon the employer the absolute duty of making a *moderate* and *definite compensation* in money to every disabled employee . . . in lieu of the common-law liability confined to cases of negligence," by permitting a recovery of an unlimited amount not for disability alone, as in the White case, but for physical suffering also. It is not a composition of losses sustained in a mutual joint adventure (as Justice PITNEY reasons) in which accidental injury is inevitable and is expected, but it places all of the loss without limitation upon one of the "coadventurers." There is in it no conception of having the employer and employee share in some measure, or at all, the loss incidental to personal injuries, a basic consideration for upholding the New York compensation law.

It is said if the "scale of compensation" be too small or too large, it would not be "supportable." We have no scale of compensation. It is without limit. It may be ever so "insignificant, on the one hand, or onerous, on the other." Notwithstanding no criticism of the compensation prescribed by the New York statute had been made, the supreme court laid much stress upon the necessity of the compensation being definite and reasonable and according to a fixed scale. When that is found in the law, it is said the arrangement is not arbitrary and unreasonable from the standpoint of natural justice. A very different case in fact and in reason from the one at bar. Ours is not a system, but a lawsuit. When an accident happens, instead of adjustment "according to a reasonable and definite scale," both sides prepare for a contest in the courts with all the attendant evils of the old system. When the litigation is finally ended and the fruits thereof, if successful, are paid over to the employee, whether inadequate or excessively large, both he and the employer have been wronged, in that a goodly portion of the recovery has been diverted from the beneficiary into various channels— such as attorney's fees, costs, and expenses—all necessary under the system.

Natural justice would dictate that nothing should be taken from the employee, nor would it tolerate the dissipation of

the employer's property as an unction to third or foreign parties. Natural justice would require that the amount to be paid by the employer and received by the employee should be reasonable according to a definite scale, and should pass unimpaired and undiminished to the beneficiary.

The right of the state to require the employer without fault to compensate the employee or his dependents, when injured in the service of the employer, is referable to the police power. As so many of the courts have said, this power is not capable of exact definition. It is recognized as the right a state has to enact laws for its preservation and betterment. It is elastic, in that it expands with social and industrial necessities of the state and may be invoked to promote the health, safety, and general welfare of the people. But there is a limit to its exercise. It may not be arbitrarily and capriciously exercised to deprive the citizen either of his property or liberty, especially in a case of this kind, where there is accruing benefit to neither the individual nor society as a whole. The supreme court in the White case has pointed out in no uncertain manner how "a just settlement of a difficult problem, affecting one of the most important of social relations," may be solved, and that solution has not been followed or observed in the least by our legislation. See, also, *Mountain Timber Co.* v. *Washington,* 243 U. S. 219, 61 L. Ed. 685, 37 Sup. Ct. Rep. 260, 13 N. C. C. A. 927; *Hawkins* v. *Bleakly,* 243 U. S. 210, 61 L. Ed. 678, 37 Sup. Ct. Rep. 255.

In the last case cited it was contended by the appellant-employer that the Iowa compensation act did not conform to "due process of law," in that it provided that if the employer rejected the act, it should be presumed, in an action for damages by the employee, that the injury was the direct result of the employer's negligence. The contention was held unsound, as it only cast the burden of proof upon the employer to rebut the presumption of fact, and the court said:

"A provision of this character, not unreasonable in itself and not *conclusive* of the *rights* of the parties, does not constitute a denial of due process of law," citing *Mobile, Jackson and Kansas City R. R. Co.* v. *Turnipseed,* 219 U. S. 35, 42, 55 L. Ed. 78, 79, Ann. Cas. 1912A, 463, 31 Sup. Ct. Rep. 436, 32 L. R. A. (N. S.) 226, 2 N. C. C. A. 243. In this last case Justice LURTON said: " . . . it must not under guise of regulating the presentation of evidence operate to pre-

clude the party from the right to present his defense to the main facts thus presumed. If a legislative provision not unreasonable in itself prescribing a rule of evidence, in either criminal or civil cases, does not shut out from the party affected a reasonable opportunity to submit to the jury in his defense all of the facts bearing upon the issue, there is no ground for holding that due process of law has been denied him.''

Thus while it was held the state may change the rules of evidence so as to cast the burden of proof in the first instant upon the employer, it may not take from him all his defenses in actions for damages for personal injury. What may not be done ''under the guise'' of a rule of evidence surely cannot be accomplished by a direct thrust of the legislature. In both the Hawkins and Turnipseed cases the court was considering actions for damages for personal injuries where the measure of damages was according to the standards of common law, and for that reason the rule announced in those cases is the rule that should be applied in the case at bar.

Again, in the Hawkins case, speaking of the power of the state to abolish the common-law defenses of fellow-servant, contributory negligence, and assumed risk, and authorizing a recovery as ''for personal injury'' when the employer rejects the compensation act, or when both the employer and employee reject it, but reserving unimpaired all these defenses in case the employer accepts and the employee rejects the act, the court said:

''We cannot say that there is here an arbitrary classification within the inhibition of the 'equal protection' clause of the Fourteenth Amendment. . . . As already shown, the abolition of such defenses is within the power of the state, and the legislation cannot be condemned when that power has been *qualifiedly exercised* without unreasonable discrimination.''

Our liability law not only abolishes the defenses named in a case of the kind we have here, but takes from the employer the right to defend by showing that he was guilty of no fault. The legislation is all in favor of the employee. The employer is given no chance to escape the unlimited liability imposed. The Iowa statute under consideration in the Hawkins case gave the employer the alternative of paying a reasonable compensation according to a definite scale, refusing

which, his only defense was to show that he was guilty of no negligence. Our liability law offers no alternative, neither can the employer defend by showing he was without fault. Granting that the employer may defend by showing that the employee contributed to the accident or that he assumed risks not inherent in the occupation, an absurdity, it seems to me, still he is deprived of the fundamental right of showing he was without fault, and at the same time made liable for unlimited damages, as in a suit for personal injury according to the standards of the common law,—and the law has provided no avenue of escape for him. This, it would seem, is "unreasonable discrimination" against the employer and in favor of the employee. That all defenses may be abolished and absolute liability imposed without fault, according to a reasonable and definite scale, is not questioned, but it is inconceivable that one who is guilty of no wrong should be made liable to an injured employee in damages unlimited and unlimitable.

I am constrained to hold that the so-called Employers' Liability Act, in so far as the procedure for the enforcement of the right of action created thereunder is concerned, is not a proper and lawful exercise of the police power of the state, and further, that it denies the employer due process of law, in that it deprives him of the right to present all his defenses, at the same time allowing unlimited damages against him according to the standard of damages at common law.

At the expense of extending this opinion—too long already—I wish to add: The right of action created by the act is not limited to the employee or, in case of death, to his dependents. It extends to the parents, whether dependent or not, and the personal representative for the benefit of the estate, in the absence of certain enumerated classes. Thus an employer without fault may be mulct in damages to an estate which would go to heirs in no way dependent upon the deceased or, there being no heirs, it would escheat. This I conceive to be contrary to every dictate of natural justice. All employers in the occupations mentioned are not millionaires—some are just beginning, with no more means than the men they employ. It reaches the small contractor and small mine owner as well as the larger concerns of the state. Yet these, under the law, guilty of nothing other than a laudable ambition to better their condition, and incidentally build up

and develop the industries of the state, may be forced to contribute to an estate that owes nothing or that may go to heirs in no way dependent on the deceased, or that may be escheated.

The workmen's compensation laws of the different states and foreign countries without exception, so far as I know, limit the benefits to the employee, or in case he dies, to his *dependents*.

In view of the fact that our Workmen's Compensation Act is not satisfactory to either employer or employee and our Employers' Liability Act, as drawn, is clearly unconstitutional, as I see it, I feel constrained to express my opinion more at length than I otherwise would.

The Workmen's Compensation Act is generally conceded to give inadequate compensation for death and injury. It is compulsory on the employer only. The employee's option to accept under it can be exercised after the injury (*Consolidated Arizona Smelting Co.* v. *Ujack*, 15 Ariz. 382, 139 Pac. 465), and is personal to the employee. The beneficiaries of the deceased cannot exercise the option at all or in any case *Behringer* v. *Inspiration Consolidated Copper Co.*, 17 Ariz. 232, 149 Pac. 1065. It therefore is not a "just settlement" of the rights and wrongs growing out of the relation of employer and employee. This confused, chaotic, and unsatisfactory condition has had the attention of both employer and employee with a view of remedying it, but owing to a lack of co-operation by the last legislature with a joint committee representing both sides, nothing was accomplished. It is devoutly to be wished that a just, reasonable, and equitable law following the lines of other states, settling the question, may soon find a place in this state.

---

On construction and effect of workmen's compensation acts generally, see comprehensive note in **L. R. A.** 1916A, 23.