## POST PUB. CO. v. BUTLER.

(Circuit Court of Appeals, Sixth Circuit. May 18, 1905.)

No. 1,379.

1. LIBEL—RETRACTION—STATUTES—CONSTRUCTION.

Rev. St. Ohio, § 5094, declares that, if a libel shall be published in good faith through a mistake of fact, with reasonable ground to believe that the statements were true, and the publisher on demand, and within a reasonable time, publishes a full and complete retraction, etc., the presumption of malice should be thereby rebutted. *Held*, that under Const. Ohio, art. 1, § 16, declaring that all the courts shall be open, and every person, for an injury done him in his person or reputation, shall have a remedy by due course of law, and justice administered without denial or delay, section 5094 should be construed so as to become operative only upon a demand being made for a retraction; and it is optional with the person libeled to stand upon his rights under the old law, or to waive a part by demanding and accepting a retraction under the law as amended.

[Ed. Note.—For cases in point, see vol. 32, Cent. Dig. Libel and Slander, § 168.]

2. SAME—INSTRUCTIONS.

A second publication, unrequested and in the nature of a correction, may be a proper circumstance to be considered by the jury in mitigation of damages in an action for libel; but its significance is entirely a question for the jury to determine.

[Ed. Note.—For cases in point, see vol. 32, Cent. Dig. Libel and Slander, § 168.]

3. SAME—EVIDENCE.

Evidence as to the circumstances which induced a press association to send out a libelous telegram is immaterial, in an action brought by the party libeled against a newspaper which published the dispatch without knowledge of the circumstances of its origin.

4. SAME—PUNITIVE DAMAGES.

Where a telegram, which grossly libels a woman widely and favorably known and who could have been easily reached, is published without inquiry as to the truth of the statements therein contained, it is for the jury to determine whether there was such a wanton disregard of the plaintiff's rights as to justify an award of punitive damages.

[Ed. Note.—For cases in point, see vol. 32, Cent. Dig. Libel and Slander, § 363.]

In Error to the Circuit Court of the United States for the Southern District of Ohio.

J. C. Harper and Alfred G. Allen, for plaintiff in error.

Joline, Larkin & Rathbone and Prescott Smith, for defendant in error.

Before LURTON, SEVERENS, and RICHARDS, Circuit Judges.

RICHARDS, Circuit Judge. This was an action for libel. There was a verdict and judgment, to reverse which this proceeding is prosecuted. On August 11, 1903, the Cincinnati Post published the telegram printed below in the first column, which was sent it by the Scripps-McCrae Press Association. The next day it pub-

lished the telegram printed in the second column, which was furnished it by the same association.

(The Post, August 11, 1903.)

## FALL OF ANNIE OAKLEY.

**Famous Woman Rifle Shot in the Police Court in Chicago Charged with Robbery by an Old Negro.'**

(By Scripps-McRae Press Association.)

Chicago, Aug. 11.—Annie Oakley, who won the applause of King Edward of England by an exhibition of marksmanship at Buckingham Palace, was a prisoner in the Harrison Street Police Court Monday. She was arrested on complaint of Charles Curtis, who charged her with robbery. She pleaded guilty and was fined $25. According to the police, the woman was addicted to the use of drugs. Annie Oakley formerly was with "Buffalo Bill's" show and commanded the salary of a light opera prima donna, was petted and feted and awarded the honors at meetings of fashionable gun clubs. The woman was arraigned yesterday morning in Justice Caverly's court in the Harrison Street Police Station, and her pitiful condition discovered. She is destitute and was forced to accept shelter from an old colored man named Curtis. It was he who had her arrested. He relented and would not appear in court against her on seeing her shattered condition. Judge Caverly. nevertheless, sent her to the Bridewell for 25 days to be restrained and cared for and treated there.

(The Post, August 12, 1903.)

## IMPOSTOR.

**Woman Who Claimed to be Annie Oakley Was not the Famous Rifle Shot.**

(By Scripps-McRae Press Association.)

Chicago, Aug. 12.—The real Annie Oakley, the police have learned, was not a prisoner at the Harrison Street Station on Monday. The woman, who posed as the expert rifle shot, is declared to be an impostor. Annie Oakley in private life is Mrs. Frank Butler, and she is living peacefully in Nutley, N. J. The prisoner sent to the Bridewell claimed to be the daughter-in-law of W. F. Cody ("Buffalo Bill"), but Mrs. Butler denied this in a telegram.

The action was based upon the first publication. The second was relied upon by the defendant as a retraction. The plaintiff, Annie Butler, wife of Frank E. Butler, is a woman of unblemished reputation, who resides at Nutley, N. J. She was born in Darke county, Ohio, where she has friends and relatives living. She is and has been for many years an expert rifle shot, who has exhibited her remarkable skill throughout the world, principally in connection with Col. Cody's Wild West Show. She is known professionally as "Annie Oakley," and is the only expert rifle shot who has exhibited under that name. At the time of the occurrence in the Chicago police court, purported to be described, she was living quietly in New Jersey. The statements made in the publication which referred to her were both false and defamatory. The telegram was received by the telegraph editor of the Post over the Scripps-McRae Press Association wire at about 10 o'clock in the morning,

and was at once headlined and put in course of publication. No effort whatever was made by any one connected with the Post to test its truth. As the editor of the Post stated, "It was an interesting news item because of the celebrity of the person involved." It was published "to make the paper interesting," and it was published immediately, for fear of a "scoop" by some rival. The court held, as a matter of law, that the second telegram was not a retraction. The jury returned a verdict for $9,000—$8,500 compensatory and $500 punitive. On motion for a new trial, the verdict was reduced to $2,500, for which judgment was entered. The rulings of the court on the admission of testimony and upon the charges refused, as well as that given, are here for review.

1. The important question involved is the construction and application of the amendment made in 1900 to section 5094 of the Revised Statutes of Ohio, regulating proceedings in actions for libel or slander, which reads as follows (94 Ohio Laws, p. 295):

"If it shall appear at the trial, that the publication complained of was made in good faith, through mistake of fact, but with reasonable ground for believing that the statements therein contained were true and that the publisher, upon demand and within a reasonable time thereafter, published a full and complete retraction in as public a manner as that in which said original publication was made, the presumption of malice attaching to or growing out of the publication of said libelous matter shall be thereby rebutted; provided that nothing contained in this act shall prevent the person libelled from alleging and proving actual malice on the part of the publisher and any special damage resulting to him therefrom."

The defendant claimed the benefit of this statute, submitting that the second publication was a retraction, but contending that, whether it was or not, the statute applied, for no demand for a retraction was made, and, in the absence of such demand, the statute became operative without one. On the other hand, the plaintiff insisted that the statute only becomes operative upon a demand for a retraction, it being optional with the person libeled to stand upon his rights under the law as it was, or to waive part by demanding and accepting a retraction in lieu thereof. The court below took the view that, to make the statute operative, it was necessary that a retraction be published, but declined to pass on the question whether a demand for it must be made by the person libeled.

In determining between these constructions, we must bear in mind any applicable constitutional limitations, for a statute ought, if possible, to be so construed as to avoid conflict with the Constitution, although such construction may not be the most obvious or natural one. 1 Lewis' Sutherland Stat. Const. § 83; Indemnity Co. v. Jarman, 187 U. S. 197, 205, 23 Sup. Ct. 108, 47 L. Ed. 139; Attorney-General v. Williams, 178 Mass. 330, 335, 59 N. E. 812; Wood v. Atlantic City, 56 N. J. Law, 232, 234, 28 Atl. 427. The Constitution of Ohio provides that:

"All courts shall be open, and every person, for an injury done him in his lands, goods, person, or reputation, shall have remedy by due course of law; and justice administered without denial or delay." Article 1, § 16.

In the Post Publishing Co. v. Moloney, 50 Ohio St. 71, 33 N. E. 921, where it was contended that one who offers his services to the

public as an officer thereby surrenders his private character to the public, and is deemed to consent to any imputation, however false and defamatory, if made in good faith, Judge Williams, speaking for the court, said (page 89 of 50 Ohio St., page 926 of 33 N. E.) :

"We do not think the doctrine either sound or wholesome. In our opinion, a person who enters upon a public office or becomes a candidate for one no more surrenders to the public his private character than he does his private property. Remedy by due course of law for injury to each is secured by the same constitutional guaranty, and the one is no less inviolate than the other."

See, also, Post Pub. Co. v. Hallam, 59 Fed. 531, 542, 8 C. C. A. 201.

The nature of the right thus referred to by Judge Williams which is guarantied by the Constitution of Ohio is outlined with great force and clearness by Judge Sanborn in his opinion in Palmer v. Mahin, 120 Fed. 737, 741, 57 C. C. A. 41, 45 :

"The unprivileged publication, in writing or print, of a false charge that another is guilty of a crime, or of a false charge which tends to expose another to public hatred or contempt, entitles the person thus defamed to recover of the publisher full compensation in damages for all the injury to his reputation, business, and feelings which the defamatory publication caused. A written or printed article of this character is libelous in itself. From its publication, the conclusive presumption of actual damages to its victim, and of legal malice—that is to say, of 'an act done wrongfully without legal justification or excuse'—at once arises. The fact that the publisher was without malice, in the popular acceptation of that term—that is to say, without ill will, bad motive, hatred, or intent to injure his victim—constitutes no defense to the latter's claim for compensatory damages, and no evidence to mitigate or reduce their amount, because the actual damages to the party libeled are the same whether they are inflicted by the publisher with a good or an evil intent, and the victim is as clearly entitled to full compensation for a wrong inflicted with a laudable motive, or through mistake or inadvertence, as for one perpetrated with a diabolical purpose or intent. The intent or purpose with which such a publication is made is immaterial in the trial of the claim for the actual or compensatory damages which the party injured may seek. It is important only when a claim for exemplary damages is to be considered."

Such was the rule in Ohio since long before the adoption of the present Constitution, malice being presumed from the publication alone. Stevens and Wife v. Handly, Wright, 121, 122; Sexton v. Todd, Wright, 316, 320; Seely v. Blair, Wright, 358, decided 1832–1833. And it is the rule to-day. Mauk v. Brundage, 68 Ohio St. 89, 67 N. E. 152, 62 L. R. A. 477, decided 1903. In this latter case, in which it was claimed that the publication, which was libelous per se, was privileged, Judge Spear said (pages 97, 98, of 68 Ohio St., page 155 of 67 N. E., 62 L. R. A. 477) :

"Whether or not the occasion gives the privilege is a question of law for the court, for, unless there is a privileged occasion, the publication of defamatory matter is legally malicious, it being a case of a wrongful act intentionally done, without just cause or excuse; that is, in the absence of a justifiable occasion for the publication, malice is but an inference of law, and should not be left as a question of fact for the jury. Folkard's Starkie, § 674; Bormage v. Prosser, 4 B. & C. 247."

It thus appears that in Ohio, up to the time of the amendment of 1900, a person injured in reputation by the publication of false

and defamatory matter had a remedy at law, irrespective of the motive of the publisher. The injury being caused by the publication, and the remedy being for the injury, malice was presumed from the publication, and the motive only became material in considering whether exemplary damages should be assessed by way of punishment. We cannot but believe that the construction contended for by the defendant destroys this right or remedy guarantied by the Constitution. No matter how serious the injury to one's reputation, the wrong done is remediless if it shall appear that the publication was made in good faith, through a mistake of fact, and with reasonable ground for believing it true. If this defense be made out, the libeled person is remitted to the recovery of "special damages," which he may obtain by alleging and proving "actual malice." In other words, even if he prove "actual malice," thus effectually rebutting the defense of good faith, he is, nevertheless, restricted to the recovery of "special damages"—damages with respect to his property, business, profession, or occupation, which are computable in money. The right to general or compensatory damages is taken away. And yet such right is the very essence of the remedy by an action for libel, and such damages usually the only ones recoverable. In most cases it is impossible to show any pecuniary loss by reason of the libel. Park v. Free Press Co., 72 Mich. 560, 565, 40 N. W. 731, 1 L. R. A. 599, 16 Am. St. Rep. 544; Hanson v. Krehbiel, 68 Kan. 670, 673, 75 Pac. 1041, 64 L. R. A. 790. Thus the statute virtually destroys the right to recover for an injury to one's standing and reputation alone. A statute somewhat similar to this before the Supreme Court of Minnesota in Allen v. Pioneer Press Co., 40 Minn. 117, 41 N. W. 936, 3 L. R. A. 532, 12 Am. St. Rep. 707, was sustained seemingly because of the mandatory provision for a retraction. Similar enactments in Michigan, Kansas, and North Carolina have been held unconstitutional. Park v. Free Press Co., 72 Mich. 560, 40 N. W. 731, 1 L. R. A. 599, 16 Am. St. Rep. 544; Hanson v. Krehbiel, 68 Kan. 670, 75 Pac. 1041, 64 L. R. A. 790; Osborn v. Leach, 135 N. C. 628, 47 S. E. 811, 66 L. R. A. 648.

We can see no way of sustaining the constitutionality of this law except by placing upon it the construction contended for by the plaintiff. Not only is a retraction required to put it into operation, but the retraction must be made at the demand of the person libeled. By such demand the injured person waives the remedy he had under the law as it stood, accepts the retraction in lieu of general damages, and consents that he be restricted, in addition to the reparation thus afforded, to a recovery of special damages where he can show actual malice. Under this interpretation he is not deprived of any constitutional right because he consents to the application of the new law to his case. If he does not consent, he still has the remedy under the old law. A man is entitled under the Constitution to a trial by jury, but he may waive it. So he is entitled to a remedy at law for an injury to his reputation, but he may demand and accept a retraction instead. In the case before us no demand

for a retraction was made, and no retraction was published, and the statute therefore did not apply.

The second publication may, in a sense, be regarded as a correction, but it was so worded as not to be even that in a satisfactory sense. The statements in the first publication were direct and explicit; those in the second indirect and indefinite. The second does not refer to the first, or assume to withdraw or correct its statements. No apology whatever is made. Allen v. Pioneer Press Co., 40 Minn. 117, 124, 41 N. W. 936, 3 L. R. A. 532, 12 Am. St. Rep. 707; Gray v. Times Co., 74 Minn. 452, 458, 77 N. W. 204, 73 Am. St. Rep. 363; Gray v. Tribune, 81 Minn. 333, 335, 84 N. W. 113; Palmer v. Mahin, 120 Fed. 737, 746, 57 C. C. A. 41.

2. It is also urged that the court erred in declining to give the following special charge:

"The defendant has put in evidence a correction which it made the day following the publication complained of. It has introduced testimony tending to show that this correction was published in as public a manner as that in which the original publication was made. It is admitted that this publication was made voluntarily, without any request by the plaintiff. These are all significant circumstances evincing the good faith of the defendant, and that the mistake which it made was an honest one."

This charge characterizes the second publication as a "correction," which the court below did not concede. It closes by saying, "These are significant circumstances evincing the good faith of the defendant, and that the mistake which it made was an honest one." While the second publication might have been a proper circumstance to be considered by the jury in mitigation of damages, the language of the request is too strong. The second publication may or may not have been "a significant circumstance." That was for the jury to determine. The charge was properly refused.

3. The point is submitted that the court erred in excluding testimony taken in Chicago with respect to the origin of the libelous telegram. While the facts thus offered in evidence may have induced the Scripps-McRae Press Association to send out the story, they were not known to the defendant prior to the publication, and therefore could in no degree have affected its action. They were properly excluded. Morey v. Morning Journal, 123 N. Y. 207, 25 N. E. 161, 9 L. R. A. 621, 20 Am. St. Rep. 730; Palmer v. Mahin, 120 Fed. 737, 747, 57 C. C. A. 41; Sun Printing, etc., Co. v. Schenck, 40 C. C. A. 163, 98 Fed. 925; Butler v. Barret (C. C.) 130 Fed. 944, 946.

4. It is also assigned as error that the court submitted the question of punitive damages to the jury, the contention being that no case for such damages was presented. We think a case was. Notwithstanding the telegram grossly libeled a woman widely and favorably known and easily reached, no inquiry whatever as to the truth of its statements was made. Because it carried a "spicy story," and for fear of a "scoop," it was rushed into print. Assuredly it was for the jury to say whether such conduct did not evince a reckless and wanton disregard of the plaintiff's rights equivalent to an intentional violation of them. Post Pub. Co. v. Hallam, 8 C.

C. A. 201, 207, 59 Fed. 530; Morning Journal Ass'n v. Rutherford, 2 C. C. A. 354, 357, 51 Fed. 513, 16 L. R. A. 803; Butler v. Barret (C. C.) 130 Fed. 944, 950.

The judgment is affirmed.