730 P.2d 186

**Steve W. BOSWELL and Jim Mofford, Plaintiffs-Appellants,**

**v.**

**PHOENIX NEWSPAPERS, INC., an Arizona corporation; and Edythe Jensen, Defendants-Appellees.**

**No. 18159–PR.**

Supreme Court of Arizona, En Banc.

Dec. 4, 1986.

Marton & Hall by Kraig J. Marton, Phoenix, for plaintiffs-appellants.

Gust, Rosenfeld, Divelbess & Henderson by James F. Henderson, Glen Hallman, Phoenix, for defendants-appellees.

Brown & Bain, P.A. by Paul F. Eckstein, Alan H. Blankenheimer, Phoenix, for amici curiae, Arizona Broadcasters Ass'n, Arizona Newspapers Ass'n, Arizona Press Ass'n, Cox Arizona Publications, New Times and Scottsdale Pub.

Molloy, Jones, Donahue, Trachta, Childers & Mallamo, P.C. by Michael J. Meehan, Tucson, for amicus curiae Citizen Pub. Co.

Haralson, Kinerk & Morey, P.C. by D. Dale Haralson, Tucson, and Langerman, Begam, Lewis and Marks by Amy G. Langerman, Phoenix, for amicus curiae Arizona Trial Lawyers Assn.

FELDMAN, Justice.

Steve W. Boswell and Jim Mofford (plaintiffs) brought a defamation action against defendants Phoenix Newspapers, Inc. and Edythe Jensen, its reporter, alleging that defendants had published a story falsely charging plaintiffs with criminal activity. Over objection, the trial judge instructed the jury that if the newspaper had adequately retracted the false statement, plaintiffs could not recover general damages. The jury returned a verdict for defendants. The court of appeals held the statute requiring the retraction instruction unconstitutional under article 18, section 6 of the Arizona Constitution (art. 18, § 6). *Boswell v. Phoenix Newspapers, Inc.*, 152 Ariz. 1, 730 P.2d 178 (Ct.App.1985). The court concluded, therefore, that the trial court had erred in giving the instruction, and remanded the case for a new trial.

We accepted review to determine the scope of the protection extended by art. 18, § 6. We have jurisdiction under Ariz. Const. art. 6, § 5(3), A.R.S. §§ 12–2101(B), (F)(1) (Supp.1986), and Rule 23(c)(4), Ariz.R. Civ.App.P., 17A A.R.S. (Supp.1986).

## FACTS

In a story written by Jensen, *The Phoenix Gazette* incorrectly reported that plaintiffs had entered guilty pleas to second-degree burglary in connection with a theft from a grocery store. In truth, plaintiffs were security guards employed at the store and had helped apprehend the thieves. Upon learning of its error, *The Gazette* voluntarily published a correction in its next edition.

Their feelings unassuaged by this act of contrition, plaintiffs responded by filing this defamation action. They introduced evidence at trial to show that the defamatory publication had damaged their reputations, affected their job performances, and inflicted severe emotional distress. Relying on A.R.S. §§ 12–653.02 and 12–653.03, the trial judge instructed the jury that if it found that the newspaper had published the retraction in substantially as conspicuous a manner as the defamatory article, it could award plaintiffs only those damages "suffered in respect to their property, business, trade, profession or occupation." This instruction, of course, would preclude the jury from awarding general damages for loss of reputation and emotional distress. From the evidence introduced at trial, the jury could have found that the retraction was adequate and that there were no special damages. Thus, the instructions embodying the cited statutes

would have required a finding for defendants, even if the jury found that plaintiffs had sustained general damages. The verdict was for the defendants. After judgment was entered, plaintiffs appealed.

The court of appeals held that the trial court should have directed a verdict on the liability issue because defendants had been negligent as a matter of law. 152 Ariz. at 5, 730 P.2d at 182. It further held that A.R.S. §§ 12–653.02 and 12–653.03 are capable of only one construction: where a media defendant has published an adequate retraction, plaintiffs are limited to recovery of "special damages"—those "suffered in respect to ... property, business, trade, profession or occupation."

The court of appeals then considered the validity of the statutes under art. 18, § 6 of the Arizona Constitution, which provides:

> The right of action to recover damages for injuries shall never be abrogated, and the amount recovered shall not be subject to any statutory limitation.

The court found that the retraction statutes "so severely limit recovery that they effectively abrogate the right to recover damages." 152 Ariz. at 8, 730 P.2d at 185. The court based this conclusion partially on the ground that the statutory scheme completely deprived large classes of defamation victims of a cause of action. *Id.* Approving the court's resolution of the other questions, we granted review solely on the abrogation holding.

### COMMON LAW DEFAMATION

The constitutional protections available to these defendants are limited because plaintiffs are neither public officials nor public figures. *Dombey v. Phoenix Newspapers, Inc.,* 150 Ariz. 476, 480–81, 724 P.2d 562, 566–67 (1986); *Peagler v. Phoe-*

*nix Newspapers, Inc.,* 114 Ariz. 309, 312–15, 560 P.2d 1216, 1219–22 (1977); *see infra* at 19, 730 P.2d at 196. The common law imposed strict liability on the publisher of defamatory statements. *Dombey,* 150 Ariz. at 480, 724 P.2d at 566. Under the common law, a publication that brought a person into disrepute or impeached honesty, integrity, virtue, or reputation was libelous per se, and presumed false, entitling plaintiff to recover damages without proving actual loss. *Id.; Broking v. Phoenix Newspapers, Inc.,* 76 Ariz. 334, 337, 264 P.2d 413, 415 (1953); *Central Arizona Light & Power Co. v. Akers,* 45 Ariz. 526, 536, 46 P.2d 126, 131 (1935). Thus, under common law, if a publication was libelous per se, plaintiff did not have to allege or prove either actual or special damages, *Akers,* 45 Ariz. at 541, 46 P.2d at 133; general damage was presumed and could be awarded absent proof of any specific injury.[1] *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 350, 94 S.Ct. 2997, 3011–12, 41 L.Ed.2d 789 (1974); *Conard v. Dillingham,* 23 Ariz. 596, 601–06, 206 P. 166, 168–70 (1922); 50 Am.Jur.2d *Libel and Slander* § 356, at 878–80 (1970).

### THE STATUTORY SCHEME

The common law was substantially changed by the challenged statutes, effective June 12, 1967. In effect, the statutes provide that a media defendant that retracts in accordance with the statutory scheme is potentially liable only for "special damages," unless a plaintiff can prove that the publication was made "with actual malice." A.R.S. § 12–653.02.[2] "Special damages" are damages that the plaintiff "proves he has suffered in respect only to his property, business, trade, profession or occupation." A.R.S. § 12–653.01(5). "General damages" are "damages for loss of

---

1. This rule, of course, is now limited by constitutional interpretation. *Post,* 152 Ariz. at 19–20, 730 P.2d at 196–97.

2. A.R.S. § 12–653.02 reads as follows:
   In an action for damages for the publication of a libel in a newspaper or magazine, or of a slander by radio or television broadcast, the plaintiff shall recover no more than spe-

cial damages unless a correction is demanded and not published or broadcast, unless the plaintiff shall prove the publication or broadcast was made with actual malice. The plaintiff shall serve upon the publisher ... a written notice specifying the statements claimed to be libelous and demanding that the same be corrected....

reputation." A.R.S. § 12–653.01(3). A plaintiff can recover general *and* special damages from a media defendant only if the defendant failed to publish an adequate retraction after a demand. A.R.S. § 12–653.03.[3] As the court of appeals noted, the statutes apparently do not allow recovery for emotional distress under any circumstances. 152 Ariz. at 7, 730 P.2d at 184.

The trial court instructed the jury in accordance with these statutes. Thus, by peremptory instruction, plaintiffs were prohibited from recovering damages for emotional distress and, assuming the jury found the retraction adequate, were prohibited from recovering for loss of reputation. Because plaintiffs' proof might not have sustained recovery of "special damages," they argue that the statutes deprived them of all recovery in violation of art. 18, § 6.

Defendants contend that the constitutional provision does not apply. They claim that art. 18, § 6 protects only causes of action that were recognized by the common law when the constitution was adopted and that enabled plaintiffs to recover damages for *negligent* infliction of *bodily* injury. If defendants are correct, art. 18, § 6 would not apply in this case for either of two reasons. First, at the time of the Arizona Constitutional Convention of 1910, defamation was a strict liability action; negligence was not an issue. *Ante* 152 Ariz. at 11, 730 P.2d at 188. Second, defamation injures reputation but does not inflict bodily injury. Defendants also contend that art. 18, § 6 does not apply because until 1922 no Arizona case had referred to emotional distress as an element of damage in a defamation action, and the constitution could not protect an element of damage not recognized when it was adopted. Moreover, even if art. 18, § 6 applies to defamation actions, defendants contend that the retraction statutes regulate rather than abrogate the action.

We turn to these issues.

## DISCUSSION

### I. *The Scope of Constitutional Protection*

#### A. *The History of Art. 18, § 6*

■ We interpret constitutional provisions by examining the text and, where necessary, history in an attempt to determine the framers' intent. *County of Apache v. Southwest Lumber Mills, Inc.*, 92 Ariz. 323, 327, 376 P.2d 854, 856 (1962). We have previously traced the history of art. 18, § 6 in the Constitutional Convention of 1910 and concluded that the clause is a "more specific and stronger" open court provision. *Kenyon v. Hammer*, 142 Ariz. 69, 74, 79–81 n. 9, 688 P.2d 961, 966, 971–73 n. 9 (1984); *see also Barrio v. San Manuel Division Hospital, Magma Copper*, 143 Ariz. 101, 105, 692 P.2d 280, 284 (1984).[4]

---

3. A.R.S. § 12–653.03 reads as follows:

   If a correction is demanded ... and is not published or broadcast in substantially as conspicuous a manner ... as the statements claimed to be libelous, ... plaintiff, if he pleads and proves the notice, demand and failure to correct, and if his cause of action is maintained, may recover general, special and exemplary damages subject to applicable rules of law governing such damages in this jurisdiction, but no exemplary damages may be recovered unless the plaintiff proves that defendant made the publication or broadcast with actual malice and then only in the discretion of the court or jury.

4. Additional historical evidence supports our conclusion that art. 18, § 6 is an open court guarantee. The proposed constitution recommended by the Constitutional Convention of 1891 had included an open court provision. Article 2, § 15 of this proposed constitution read as follows:

   All courts shall be open, and every person for an injury done him in his lands, goods, person, or reputation, shall have remedy by due course of law.

Although the constitution of 1891 did not go into effect, the principles of art. 2, § 15 obviously were not forgotten. Variations of open court guarantees again were introduced during the 1910 constitutional convention. These read:

   The courts of justice of the state shall be open to every person, and speedy and certain remedy afforded for every injury to person, property or reputation; ....

Proposition No. 104.

   COURTS OF JUSTICE MUST BE OPEN: That courts of justice shall be open to every person,

Thirty-seven states have "open court" or "certain remedy" provisions. Note, *Constitutional Guarantees of a Certain Remedy,* 49 IOWA L.REV. 1202 (1964).[5] The provision is of ancient origins, having its roots in the Magna Carta and having been given more modern currency in Sir Edward Coke's comments on the Magna Carta in his "Second Institute." *Id.* at 1203.[6]

As we stated in *Kenyon* and *Barrio,* art. 18, § 6 is an "open court" guarantee intended to constitutionalize the right to obtain access to the courts and a remedy for damages sustained. *Kenyon,* 142 Ariz. at 73–75, 79–83, 688 P.2d at 965–67, 971–75; *Barrio,* 143 Ariz. at 105, 692 P.2d at 284. We still must decide, however, exactly what types of actions and damages the framers intended to constitutionalize. Did the framers intend to limit the protection of art. 18, § 6 to negligence cases in which bodily injury was sustained or to extend it to all actions recognized at common law?

### B. *The Language of Art. 18, § 6*

The language of art. 18, § 6 gives no hint that the framers intended to restrict its protection in the manner defendants suggest. Its language is plain, clear, and "all-inclusive." *Kilpatrick v. Superior Court,* 105 Ariz. 413, 419, 466 P.2d 18, 24 (1970). Section 6 does not speak of negligence actions, but of the "right of action to recover damages."[7] It mentions no particular type of damage, but speaks instead to the broad "right ... to recover damages for injuries." Article 18, § 6 contains no restrictive adjectives or phrases.

The constitutional text being unrestricted, it would be inappropriate for this court to restrict the guarantee by adding words of limitation "contrary to the plain language used." *Kilpatrick,* 105 Ariz. at 419–20, 466 P.2d at 24–25. We should not narrowly interpret the provision "in direct derogation of the express rights guaranteed in Section 6," *id.,* unless compelled to do so by prior construction that illuminates the framers' intent.

### C. *Prior Case Law*

Defendants contend that precedent binds us to apply art. 18, § 6 to protect only *negligence* actions. The defendants and amici cite decisions in which this court stated that the constitution's framers intended that art. 18, § 6 protect "the common-law action of *negligence*" by giving it constitutional standing. *Alabam's Freight Co. v. Hunt,* 29 Ariz. 419, 443, 242 P. 658, 665 (1926) (emphasis added); *see also Kenyon,* 142 Ariz. at 79–83, 688 P.2d at 971–75; *Moseley v. Lily Ice Cream Co.,* 38 Ariz. 417, 420, 300 P. 958, 959 (1931); *Inspiration Consolidated Copper Co. v. Mendez,* 19 Ariz. 151, 172, 166 P. 278, 1184 (1917) (Ross, J., dissenting), *aff'd sub nom.,* 250

and certain remedy afforded for every injury to person, property or character,.... Proposition No. 116.
In *Kenyon* and *Barrio* we traced the evolution of art. 18, § 6 and art. 2, § 31 of the Arizona Constitution.

5. In substance, these provisions provide that the courts "shall be open to every person, and speedy and certain remedy afforded for every wrong and for every injury to person, property, or reputation." Note, *supra,* 49 IOWA L.REV. at 1202. Judicial construction of these provisions has varied. Some courts maintain that the open court guarantee preserves the existence of those causes of action which were well established at the time the constitutions were adopted. *Id.* at 1206. The more prevalent position is that legislatures have the right to alter common law rules and remedies, but they may not deny remedies altogether. Some adequate remedy must remain. *Id.* at 1206–07.

6. "Coke asserted that 'every Subject ... for injury done to him *in bonis, terris, vel persona,* by any other Subject ... may take his remedy by the course of the Law, and have justice, and right for the injury done to him, freely without sale, fully without any deniall, and speedily without delay.'" Note, *supra,* 49 IOWA L.REV. at 1203, *quoting* COKE, SECOND INSTITUTE 55–56 (4th ed. 1671).

7. Other provisions in article 18 are more narrowly drawn. Article 18, § 7, which requires enactment of employers' liability law, mentions "accident" cases and "injury ... caused by the negligence of the employee." Article 18, § 8, which deals with enactment of a workmen's compensation law, speaks of "personal injury" and "failure ... to exercise due care."

U.S. 400, 39 S.Ct. 553, 63 L.Ed. 1058 (1919); *Landgraff v. Wagner*, 26 Ariz.App. 49, 54, 546 P.2d 26, 31 (App.1976), *appeal dismissed* 429 U.S. 806, 97 S.Ct. 40, 50 L.Ed.2d 67 (1976) (*for want of jurisdiction*). They contend that these decisions limit art. 18, § 6's protection to common law negligence actions *only*.

It is equally true, however, that this court has more expansively interpreted art. 18, § 6. For instance, Chief Justice Struckmeyer wrote:

> There is no room for quibbling. The language of Section 6 is simple, explicit and all-inclusive. It cannot be misunderstood. Without limitation it confers the right to recover damages for injuries as existing under the common law.

*Kilpatrick*, 105 Ariz. at 419, 466 P.2d at 24; *see also Halenar v. Superior Court*, 109 Ariz. 27, 504 P.2d 928 (1972) (legislature bound by the constitution in dealing with *common law rights* of action).

We do not find the language of any of the cases determinative. None of the cases cited actually dealt with the issue presented here. So far as we can determine from citations provided by counsel and from our own research, no Arizona appellate court has ever been asked to determine whether art. 18, § 6's protection is limited to the right to recover for negligent torts or for those torts in which bodily injury has been sustained. Thus, the issues before us are questions of first impression.

Defendants argue that we must adopt the narrow interpretation of art. 18, § 6 espoused in Justice Ross's dissent in *Inspiration Consolidated Copper*, 19 Ariz. at 169 *et seq.*, 166 P. at 1183 *et seq.*, which eventually became the law in *Alabam's Freight Co. Kenyon*, 142 Ariz. at 82, 688 P.2d at 974. The "narrow" interpretation favored by Justice Ross, however, was directed to the question of whether art. 18, § 6 applied to causes of action created by the legislature but previously unrecognized by the common law. The issue in *Inspiration Consolidated Copper*, for instance, was whether art. 18, § 6 applied to the provi-

sions of the new Employers' Liability Law. Justice Ross stated:

> That the above constitutional provisions [art. 18, §§ 4, 5, 6 and art. 2, § 31] do not apply to or affect the newly created rights of action for compensation against the employer is evident, or else our Workmen's Compensation Act would be violative of the Constitution, in that it [the statute] does limit the amount of recovery. For like reasons I think they do not apply to the liability created by the statute known as the Employers' Liability Act. This latter act creating new liability,—one not known to the common law and in derogation thereof,—it would seem that the power of the legislature to fix the measure of compensation in disregard of the common-law rule is as absolute as under the compensation act.

*Inspiration Consolidated Copper*, 19 Ariz. at 172, 166 P. at 1185 (Ross, J., dissenting). The *Inspiration Consolidated Copper* court, however, held that art. 18, § 6 protected common-law measures of recovery even in actions previously unknown to the common law. 19 Ariz. at 166–67, 166 P. at 284–85.

A majority eventually approved Justice Ross's narrower view in *Alabam's Freight*. Using language similar to that used by Justice Ross in *Inspiration Consolidated Copper*, the court described art. 18, § 6 as a guarantee of the "common-law action of negligence." 29 Ariz. at 443–44, 242 P. at 665. Again, however, the issue was whether art. 18, § 6 applied not only to common law actions, but also to those actions created by the legislature. *Alabam's Freight*'s negative response to that question is not determinative in this case because the cause of action for defamation was not a legislative creation.

Thus, nothing in past decisions demonstrates that the framers intended to limit the broad language of the constitutional guarantee to protect actions for negligent torts, excluding protection for tort actions based upon strict liability.

### D. *Framers' Intent*

█ The theory behind strict liability is that one who engages in conduct "so far socially questionable" that it does not justify a no-fault immunity can be held strictly liable for any damages he or she causes. W. PROSSER & W. KEETON, THE LAW OF TORTS § 75, at 538 (5th ed. 1984). Strict liability is based upon "the creation of an undue risk of harm to other members of the community." *Id.*

Under turn-of-the-century common law, strict liability was recognized for torts involving damages caused by keeping wild animals, *id.* § 76, at 541, collecting and releasing water on land owned by others, storing explosives or inflammable liquids, blasting, accumulating sewage, creating nuisances, and other abnormally dangerous activities. *Id.* § 78, at 546–47; *Inspiration Consolidated Copper*, 19 Ariz. at 165, 166 P. at 283, quoting *New York Central Railroad Co. v. White*, 243 U.S. 188, 204, 37 S.Ct. 247, 253, 61 L.Ed. 667 (1917). *See generally* Smith, *Tort and Absolute Liability—Suggested Changes in Classification*, 30 HARV.L.REV. 319 (1917).

Given the historical milieu in which Arizona's constitution was adopted, *See generally* J.R. MURDOCK, CONSTITUTIONAL DEVELOPMENT OF ARIZONA 25–55 (1933), it is difficult to believe that the framers would have intended to deprive the legislature of the power to abrogate the right to recover for negligent torts while allowing it the power to abrogate actions dealing with many of the things held most dear by the state's residents. For instance, why would the framers have intended to prohibit the legislature from abrogating actions for negligent torts but allow it to abrogate the cause of action brought by a landowner whose property was destroyed by blasting in defendant's mining shaft? Smith, *supra*, 30 HARV.L.REV. at 330–31. Why would the framers have intended that the legislature have the power to abolish recovery by farmers and ranchers whose land had been damaged by a neighbor's diversion of surface water? *Cf.* The Revised Statutes of Arizona Territory § 3252–53 (1901) (mine owners failing to provide for drainage liable for cost of pumping or draining overflow into another's mine); The Revised Statutes of Arizona Territory § 2353 (1887) (same). To adopt the construction of art. 18, § 6 urged by defendants would fly in the face of much of what history tells us the framers considered most dear and important. *See generally* J.R. MURDOCK, *supra.*

It is equally incomprehensible to imagine why the framers would have intended to limit the protection of art. 18, § 6 to bodily injury damages, thus excluding cases of injury to real property, personal property, reputation, privacy, and other noncorporeal rights. The framers considered these rights quite important. *See, e.g.,* Ariz. Const. art. 2, § 6 (guaranteeing to each person the right to "freely speak, write, and publish ..., being responsible for the abuse of that right."); Ariz. Const. art. 2, § 8 (guaranteeing the right to privacy).

We can deduce no reason, and none has been suggested to us, for attributing to the framers any reasoned intent to narrow the scope of this broadly-worded provision. We turn, then, in our search for framers' intent, to the construction given "open court" provisions prior to our adoption of a "stronger" version. We seek to determine, in other words, what the framers thought they were adopting.

### E. *Open Court Provisions of Other States*

Even before 1912, other states had applied the protection of their open court provisions to the right to recover damages for injury to reputation. *See Post Publishing Co. v. Butler*, 137 F. 723 (6th Cir.1905) (applying Ohio Constitution);[8] *Moore v. Stevenson*, 27 Conn. 13, 27 (1858);[9] *Han-*

---

8. All courts shall be open, and every person for an injury done him in his lands, goods, person, or reputation, shall have remedy by due course of law. Ohio Const., art. I, § 16.

9. All courts are to be open to grant redress for every injury to the person, property, or reputation, without denial or delay. Conn.Const., art. I, § 10, *cited in Moore, supra.*

*son v. Krehbiel,* 68 Kan. 670, 75 P. 1041 (1904); [10] *Allen v. Pioneer Press,* 40 Minn. 117, 41 N.W. 936 (Minn.1889); [11] *Osborn v. Leach,* 135 N.C. 628, 47 S.E. 811 (1904); [12] *see also Meyerle v. Pioneer Publishing Co.,* 45 N.D. 568, 178 N.W. 792 (1920) (per curiam); [13] *Byers v. Meridian Printing Co.,* 84 Ohio St. 408, 95 N.E. 917 (1911) (per curiam).[14] That same principle has been followed in modern cases.[15] *See Madison v. Yunker,* 180 Mont. 54, 589 P.2d 126 (1978); [16] *Davidson v. Rogers,* 281 Or. 219, 574 P.2d 624 (1978).[17] To our knowledge, no court in an open court provision state has ever held the clause inapplicable to the right to seek relief for injury to reputation. In fact, one state with no constitutionally compelled open court guarantee was willing to strike down its retraction statute:

> There is no room for holding in a constitutional system that private reputation is any more subject to be removed by statute from full legal protection than life, liberty, or property. It is one of those rights necessary to human society that underlie the whole social scheme of civilization.

*Park v. Detroit Free Press Co.,* 72 Mich. 560, 566, 40 N.W. 731, 733 (1888). *But see*

*Werner v. Southern California Associated Newspapers,* 35 Cal.2d 121, 216 P.2d 825 (1950) (upholding retraction statute against equal protection and due process challenges in state without open court provision).

The scope of "open court" or "access to justice" constitutional guarantees was well characterized in an early Oregon case that dealt with a legislative enactment prohibiting tort actions against counties. Holding that the statute violated Oregon's open court provision, *see* n. 16, *ante,* the Oregon Supreme Court quoted from *Eastman v. Clackamas County,* (C.C.) 32 Fed. 24, 32 (1887):

> Whatever injury the law, as it ... stood [at the time of the Constitution], took cognizance of and furnished a remedy for, every man shall continue to have a remedy for by due course of law. When this Constitution was formed and adopted, it was and had been the law of the land, from comparatively an early day, that a person should have an action for damages against a county for an injury caused by its act or omission. If this then known and accustomed remedy

10. All persons, for injuries suffered in person, reputation, or property, shall have remedy by due course of law.... Kansas Const., Bill of Rights § 18.

11. [E]very person is entitled to a certain remedy in the laws for all injuries or wrongs which he may receive on his person, property, or character. Minn.Const., art. I, § 8.

12. All courts shall be open, and every person, for an injury in his lands, goods, person, or reputation, shall have remedy by due course of law. N.C.Const., art. I, § 35.

13. All courts shall be open, and every man for an injury done him in his lands, goods, person or reputation shall have remedy by due process of law.... N.D.Const., art. I, § 22.

14. *See* n. 7, *supra.*

15. Some courts have used the open court provision to invalidate retraction statutes substantively similar to Arizona's. *See Hanson,* 68 Kan. 670, 75 P. 1041; *Madison v. Yunker,* 180 Mont. 54, 589 P.2d 126 (1978); *Byers,* 84 Ohio St. 408, 95 N.E. 917. Other states have upheld the constitutionality of their retraction statutes against

an open court attack by interpreting the statute either to allow plaintiffs to recover general damages, or to allow them an option of either demanding a retraction or seeking general damages. *See Post,* 137 F. 723; *Allen,* 40 Minn. 117, 41 N.W. 936, *explained in Thorson v. Albert Lea Publishing Co.,* 190 Minn. 200, 251 N.W. 177 (1933); *Osborn,* 135 N.C. 628, 47 S.E. 811; *Meyerle,* 45 N.D. 568, 178 N.W. 792. Oregon held its retraction statute constitutional on the ground that it does not deny a remedy, but provides an alternative remedy—retraction. *Davidson,* 281 Or. 219, 574 P.2d 624; *Holden v. Pioneer Broadcasting Co.,* 228 Or. 405, 365 P.2d 845 (1961), *cert. denied,* 370 U.S. 157, 82 S.Ct. 1253, 8 L.Ed.2d 402 (1962).

16. Courts of justice shall be open to every person, and speedy remedy afforded for every injury of person, property, or character. Mont. Const., art. II, § 16.

17. No court shall be secret, but justice shall be administered openly and without purchase, completely and without delay, and every man shall have remedy by due course of law for injury done him in his person, property, or reputation. Or.Const., art. I, § 10.

can be taken away in the face of this constitutional provision, what other may not? Can the legislature, in some spasm of novel opinion, take away every man's remedy for slander, assault and battery, or the recovery of a debt? and, if it cannot do so in such cases, why can it in this?

*Theiler v. Tillamook County*, 75 Or. 214, 217, 146 P. 828, 829 (1915). The Kansas Supreme Court long ago invalidated a retraction statute similar to ours, holding that it violated the Kansas access to justice provisions guaranteeing a "remedy by due course of law." *Hanson*, 68 Kan. at 672–78, 75 P. at 1042–44.[18]

Assuming that the framers of our constitution were familiar with contemporaneous principles of jurisprudence and constitutional law,[19] we must conclude that their use of all-inclusive language in art. 18, § 6 was intended to provide the same type of broad protection that resulted from construction given such clauses in our sister states.

After examining the text, the history, our prior case law, and the law of other states construing similar open court provisions, we conclude that the framers did not intend the protection of art. 18, § 6 to extend only to actions for negligent torts involving bodily injury claims. We hold, therefore, that art. 18, § 6 protects the right to recover damages for injury to reputation.

## F. *Is Emotional Injury a Damage within the Scope of Art. 18, § 6?*

■ As we have shown, art. 18, § 6 was intended to take the right to seek justice out of executive and legislative control, preserving the ability to invoke judicial remedies for those wrongs traditionally recognized at common law. Defendants argue that even if art. 18, § 6 protects a plaintiff's right to sue for damage to reputation, the provision does not protect recovery for emotional distress because that type of damage was not recognized in a defamation action until 1922. *Conard*, 23 Ariz. at 605, 206 P. at 169.[20] Defendants would have us freeze the principles and incidents of common law actions as of 1912. We reject this argument.

Although art. 18, § 6 preserves common law rights, our common law is not frozen as of 1912. *Summerfield v. Superior Court*, 144 Ariz. 467, 698 P.2d 712 (1985).[21] The constitutional protection extends to

---

**18.** Florida holds that its open court provision prohibits legislative abrogation of causes of action adopted from English common law by statute in 1829 (*see* A.R.S. § 1–201) or provided by law prior to Florida's Declaration of Rights in 1838. *Kluger v. White*, 281 So.2d 1 (Fla.1973); *Clarke v. Storchak*, 384 Ill. 564, 576, 52 N.E.2d 229, 236 (1943), *appeal dismissed*, 322 U.S. 713, 64 S.Ct. 1270, 88 L.Ed. 1555 (1944) (*lack of federal question*); *Ludwig v. Johnson*, 243 Ky. 533, 543, 49 S.W.2d 347, 351 (1932). A similar holding was reached in *Gentile v. Altermatt*, 169 Conn. 267, 286, 363 A.2d 1, 12 (1975), *appeal dismissed*, 423 U.S. 1041, 96 S.Ct. 763, 46 L.Ed.2d 631 (1976) (*lack of federal question*). These cases reflect the vast majority of cases holding that the open court or access to justice provisions of state constitutions protect the right to sue for damages to reputation and that statutes that abrogate that right are void. *See ante* 152 Ariz. at 15–16, 730 P.2d at 192–93. Again, we note that art. 18, § 6 of our constitution is but a "stronger" form of open court guarantee.

**19.** Thirteen of the fifty-two delegates at the 1910 constitutional convention were lawyers. Bakken, *The Arizona Constitutional Convention of 1910*, 1978 ARIZ.L.J. 1, 25 n. 182.

**20.** Recovery for emotional distress in a defamation action, although not expressly referred to in Arizona until 1922, was not a novel idea. Such damages were recoverable at common law. *Conard*, 23 Ariz. at 605–06, 206 P. at 169 (citing ODGERS, LAW OF LIBEL AND SLANDER 302 (1877); *Boldt v. Budwig*, 19 Neb. 739, 28 N.W. 280 (1886)).

**21.** By analogy, when Arizona became a state it adopted the common law of England as the "rule of decision" in our courts. A.R.S. § 1–201. This statute, however,

> [d]oes not mean that the common law adopted at the time of statehood never changes. Just as the common law is court-made law based upon the circumstances and conditions of the time, so can the common law be changed by the court when conditions and circumstances change.

*Fernandez v. Romo*, 132 Ariz. 447, 449, 646 P.2d 878, 880 (1982).

wrongs recognized at common law, but it is not limited to those elements and concepts of particular actions which were defined in our pre-statehood case law. Article 18, § 6 protects the *right of people to seek "remedy by due course of law"* for injury to their "lands, goods, person, or reputation." Proposed Constitution of 1891, art. 2, § 15 (emphasis added). The law must allow for evolution of common-law actions to reflect today's needs and knowledge. Any other rule would allow those "long dead" to dictate solutions to problems of which they could not have been aware. *Lewis v. Wolf*, 122 Ariz. 567, 568, 596 P.2d 705, 706 (App. 1979) (citing Douglas, *Stare Decisis*, 49 COLUM.L.REV. 735, 736 (1949)).

Nor is responsibility for and power over such evolution taken from the legislature. We are not diminishing the legislature's power to regulate the incidents of common-law actions. We have noted previously that "a statute is not an alien intruder in the house of the common law." *Summerfield*, 144 Ariz. at 473, 698 P.2d at 718 (citing Stone, *The Common Law in the United States*, 50 HARV.L.REV. 4, 15 (1936)). We have held also that the common law may "participate in the growth and evolution of a statutorily created action." *Summerfield*, 144 Ariz. at 473, 698 P.2d at 718. Article 18, § 6 does eliminate the legislature's power to control the existence of tort law. The guarantee of access to judicial remedy prevents the legislature from closing the courthouse door to those claiming to have suffered a wrong recognized by the common law. History teaches us that despite the shortcomings of the judicial system, only in a court of justice may the rights of all be recognized and treated equally. Our founders adopted this concept in creating separate but equal branches of government and imposing each as a check and balance on the others.

Thus, while the legislature may regulate what is done in the courthouse, it may not turn the courts into a useless structure by barring access. Regulation is a shared power, but abrogation by abolishing access to judicial remedy is beyond legislative power. This brings us to defendants' final argument: that the retraction statutes do not violate art. 18, § 6 because they only regulate the right to recover for defamation.

## II. *Is the Retraction Statute an Abrogation or a Regulation?*

We have consistently held that the constitution prohibits legislative abrogation, but not legislative regulation, of a right of action. *Ruth v. Industrial Commission*, 107 Ariz. 572, 575, 490 P.2d 828, 831 (1971); *Moseley*, 38 Ariz. at 420–21, 300 P. at 959. We differentiate between abrogation and regulation by determining whether a purported legislative regulation leaves those claiming injury a reasonable possibility of obtaining legal redress. *Ruth, supra; Kilpatrick*, 105 Ariz. at 419–21, 466 P.2d at 24–26. We recently stated that legislative action is regulatory

> [s]o long as it leaves a claimant reasonable alternatives or choices which will enable him or her to bring the action. [The legislature] may not, under the guise of "regulation," so affect the fundamental right to sue for damages as to effectively deprive the claimant of the ability to bring the action.

*Barrio*, 143 Ariz. at 106, 692 P.2d at 285 (citing *Kenyon*, 142 Ariz. at 88, 688 P.2d at 980 (Hays, J., concurring)). Article 18, § 6 thus guarantees that those seeking a remedy are able "to enforce [their claims] in court ... without the necessity of overcoming practically insurmountable defenses" constructed by legislative act. *Barrio*, 143 Ariz. at 106, 692 P.2d at 285 (*quoting Industrial Commission v. Crisman*, 22 Ariz. 579, 595, 199 P. 390, 395 (1921) (McAlister, J., concurring)).

Arizona's retraction statutes prevent many defamed plaintiffs from recovering damages for actual injury to reputation and for emotional suffering. Once a media defendant retracts, the plaintiff can recover only special damage to his or her trade, profession, business, or occupation. A.R.S. § 12-653.02. As the court of appeals pointed out, the recovery scheme creates insur-

mountable hurdles for large and foreseeable classes of victims. 152 Ariz. at 8, 730 P.2d 185. Among those effectively deprived of any remedy are the elderly, the retired, homemakers, children, and all others who may have no trade, business, profession, or occupation. *Id.*

> Other examples are those
>
> [with income] from fixed investment or salary or official emolument, or business not depending upon his repute.... The cases must be very rare in which a libel will destroy business profits in such a way that the loss can be directly traced to the mischief.... The statute does not reach cases where a libel has operated to cut off chances of office or employment in the future, or broken up or prevented relationships not capable of an exact money standard, or produced that intangible but fatal influence which suspicion, helped by ill will, spreads beyond recall or reach by apology or retraction....

*Hanson*, 68 Kan. at 676–77, 75 P. at 1043 (*quoting Park*, 72 Mich. at 565, 40 N.W. at 733).

Thus, the retraction statutes go beyond regulating the mode, method, and procedure to be followed in pursuing the cause of action. In addition, the retraction statutes do not merely regulate the type and amount of damage that can be recovered.[22] Instead, they completely deprive many who have sustained real injury of judicial remedy. For many who have been wronged, the effect of the statutes is to substitute retraction—a form of correction, withdrawal, and sometimes of apology—for a judicial remedy. A retraction is insufficient. Article 18, § 6 of the constitution "fixes the right to a remedy and where it may be sought." *Madison*, 180 Mont. at 63, 589 P.2d at 131. The legislature is without power to eliminate a judicial remedy. Of course, nothing prevents the legislature

from requiring that retraction be considered in mitigation of damages, a principle already recognized at common law. 50 Am.Jur.2d *Libel and Slander* § 375, at 899–900.

We hold, therefore, that A.R.S. § 12–653.02 offends art. 18, § 6 of the Arizona Constitution and is void insofar as it eliminates general damages for both loss of reputation and emotional harm, preventing those damaged by defamation from recovering general damages for *actual* injury.

■ Of course, the first amendment of the United States Constitution limits this holding. *See Gertz*, 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789; *Dombey*, 150 Ariz. 476, 724 P.2d 562. State remedies for defamatory falsehood must "reach no farther than is necessary to protect the legitimate interest involved." *Gertz*, 418 U.S. at 350, 94 S.Ct. at 3012.

Thus, a media defendant may not be held liable without a showing of the requisite degree of fault. *Dombey, supra.* If the defamation involves "a matter of public concern," a jury may not award presumed or punitive damages absent a showing of "actual malice." *Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*, 472 U.S. 749, 105 S.Ct. 2939, 86 L.Ed.2d 593 (1985). Compensation may be awarded to public plaintiffs or private plaintiffs defamed by a statement involving a matter of public concern only

> for actual injury. We need not define "actual injury," as trial courts have wide experience in framing appropriate jury instructions in tort actions. Suffice it to say that actual injury is not limited to out-of-pocket loss. Indeed, the more customary types of actual harm inflicted by defamatory falsehood include impairment of reputation and standing in the community, personal humiliation, and mental an-

---

**22.** Regulating damage recovery is not necessarily and completely forbidden by art. 18, § 6. *See Eastin v. Broomfield*, 116 Ariz. 576, 584–85, 570 P.2d 744, 752–53 (1977) (collateral source rule). It could be argued, however, that statutes abolishing traditionally recognized categories of damage, such as compensation for general dam-

age to reputation and for emotional suffering, also are contrary to art. 2, § 31 and the last clause of art. 18, § 6, both of which provide that the amount recovered shall not be subject to any statutory limitation. Because this theory was not argued, we do not reach the issue in this opinion.

guish and suffering. Of course, juries must be limited by appropriate instructions, and all awards must be supported by competent evidence concerning the injury, although there need be no evidence which assigns an actual dollar value to the injury.

*Gertz,* 418 U.S. at 350–51, 94 S.Ct. at 3012; *see also Dun & Bradstreet, supra.*

## CONCLUSION

The opinion of the court of appeals is approved as supplemented by this opinion. The judgment of the trial court is reversed and the case is remanded for proceedings consistent with this opinion.

HOLOHAN, C.J., GORDON, V.C.J., and HAYS and CAMERON, JJ., concur.